In re Vincent P. RYBICKI and Wanda F. Rybicki, Debtors.

Bankruptcy No. 91–31217.

United States Bankruptcy Court, S.D. Illinois.

March 12, 1992.

James Van Winkle, McCleansboro, Ill., for Lindsey's.

Bob Kearney, Trustee, Benton, Ill.

William A. Mueller, Belleville, Ill., for debtors.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Debtors, Vincent and Wanda Rybicki, filed a petition on November 1, 1991, seeking relief under Chapter 13 of the Bankruptcy Code. The trustee objected to the confirmation of debtors' Chapter 13 plan, alleging that a debt owed by the debtors for a 1988 Prowler travel trailer (a camper) was not a reasonably necessary living expense pursuant to § 1325(b) of the Bankruptcy Code.

In their schedules, debtors list secured claims in the amount of $33,816.00, and unsecured claims in the amount of $5,344.00. Debtors' secured debts include the debt for the camper. Boatmen's Bank of Mt. Vernon (Boatmen's) filed a proof of claim in the amount of $4,644.20, listing the camper as security for the debt. The fair market value of the camper is greater than the amount owed on it by the debtors.

Debtors have a current monthly income of $1,669.00 and monthly expenses of $1,421.00, for a net disposable income of $248.00 per month. In their plan, debtors propose to pay $250.00 per month to the trustee for distribution to creditors, with secured creditors receiving the value of their collateral and unsecured creditors receiving 10% of their allowed claims.

Section 1325(b) of the Bankruptcy Code provides:

(b)(1) If the trustee ... objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan ...

(B) the plan provides that all of the debtor's projected disposable income ... will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor....

11 U.S.C. § 1325(b) (1991). The trustee contends the debtors are not applying all of their disposable income toward making payments under the plan. The trustee argues that the income used by the debtors to pay the debt on the camper is disposable income within the meaning of § 1325(b) because the camper is not reasonably necessary for the support of the debtors or a dependent of the debtors.

■ Courts have held that, under certain circumstances, debts for such items as a new four-wheel-drive Chevrolet Blazer, a Chapparell boat, and a Corvette automobile are not reasonably necessary expenses pursuant to § 1325(b). *In re Reyes*, 106 B.R. 155 (Bankr.N.D.Ill.1989); *In re Hedges*, 68 B.R. 18 (Bankr.E.D.Va.1986); *In re Rogers*, 65 B.R. 1018 (Bankr.E.D.Mich.1986). Similarly, this Court has held that debtors cannot include charitable contributions as expenses when calculating their disposable income because such contributions are not reasonably necessary for the maintenance or support of debtors as required by

§ 1325(b). *In Re Bennett*, BK No. 90–50816, slip op. at 3–4 (Bankr.S.D.Ill.1991).

Debtors point out that their plan provides they will pay $250.00—that is, their entire disposable income of $248.00—into the plan. Debtors did not list the debt owed on the camper in their schedule of expenses, and thus did not consider that debt when they calculated their disposable income. Therefore, debtors conclude they have fulfilled the disposable income requirement.

Some support exists for debtors' contention. In *Matter of Jones*, 119 B.R. 996 (Bankr.N.D.Ind.1990), a creditor objected to the debtor's plan because the debtor proposed to pay, through his plan, a large debt owed on a Cadillac Brougham automobile. The creditor contended the debt was not a reasonably necessary expense pursuant to § 1325(b). The *Jones* court held that an analysis under the disposable income requirement of § 1325(b) was inappropriate. The court determined that § 1325(b) focuses on a debtor's *post*-petition lifestyle, in other words, the ongoing living expenses the debtor anticipates incurring during the course of the plan. The purpose of § 1325(b), according to the *Jones* court, is to allow a debtor "to maintain a reasonable lifestyle while simultaneously insuring that [he or she] makes a serious effort to fulfill [his or her] obligations to [pre-petition] creditors, by eliminating unnecessary or unreasonable expenses." *Jones*, 119 B.R. at 1001. The court held that § 1325(b) "does not impose a reasonable necessity test upon the [pre-petition] obligations a debtor is attempting to repay through the plan." *Id.*[1] The *Jones* court concluded

---

1. The *Jones* court stated:

In *Reyes* and *Rogers*, the [c]ourts analyzed the payments on the debtor's vehicles to determine if they were reasonably necessary. Yet, these payments were not part of the debtor's monthly living expenses. They were to [be] made by the trustee as part of the payments to creditors under the plan. By considering the payments in the context of disposable income, these decisions incorrectly imposed a reasonable necessity requirement on the plan's payments to pre-petition creditors and on the nature of the debtor's obligations to those creditors. While the concerns which motivat-

ed the inquiries along these lines are things the bankruptcy courts should be sensitive to, they are not part of the disposable income test of § 1325(b). They are more appropriately addressed in the broader context of the good faith analysis required by § 1325(a)(3). Doing so gives the court greater latitude in determining the propriety of a debtor's proposal. Using the disposable income test unduly constrains the focus of the court's inquiries and restricts the flexibility inherent in the formulation of a Chapter 13 plan, by automatically precluding confirmation of any plan under which the debtor attempts to retain an encum-

that the appropriateness of paying certain *pre*-petition debts as part of the plan is a concern better addressed within the context of the good faith requirement of § 1325(a)(3).[2]

■ This Court disagrees with the *Jones* court's analysis for several reasons. First, disposable income is affected by a debtor's payment of both pre-petition debts and post-petition expenses. A pre-petition debt affects disposable income because payment of the debt through the plan reduces the amount of disposable income otherwise available for the remaining pre-petition debts the debtor is paying off through the plan, including the debts owed to unsecured creditors. Disposable income is also affected by a debtor's payment of a post-petition expense because the expense is included in the debtor's list of budgeted expenses and subtracted from the debtor's gross income to determine the debtor's disposable income. Significantly, in both circumstances, payment of the debt or expense at issue reduces the payments the unsecured creditors receive.

In *Hedges*, 68 B.R. 18, the debtor's scheduled income of $2,313.00 equaled his scheduled expenses. Debtor's scheduled expenditures included a monthly payment of $187.61 for a Chapparell boat. Debtor proposed to pay through his plan $140.00 per month to the trustee with unsecured creditors receiving 45% of their claims. The trustee objected to the confirmation of the debtor's plan on the basis that the plan provided for payment of the boat in contravention of § 1325(b). The court in *Hedges* aptly stated the pertinent concern:

> The debtor has argued that, since payment for the boat is provided for *through* the plan, all of his disposable income is being applied to make payments under the plan. Thus, he urges, the requirements of § 1325(b) have been met. This argument is not well taken. If this sort of reasoning were accepted,

any debtor who wished to avoid the provisions of § 1325(b) could simply purchase property not reasonably necessary for maintenance and support, provide for its payment under the plan, and build equity in that property to the detriment of the general unsecured creditors of the estate who would otherwise receive a larger dividend. It is this Court's opinion that Congress did not intend to allow such conduct by individuals in financial straits.

*Hedges*, 68 B.R. at 21.

Second, § 1325(b) does not explicitly distinguish between pre-petition debts and post-petition expenses. The statute simply requires that a debtor pay into the plan all income not reasonably necessary for the debtor's support. Moreover, this Court sees little difference between the two types of obligations when a debtor pays both post-petition. Although a secured debt may have been incurred pre-petition, a debtor chooses, after the bankruptcy petition is filed, to pay the pre-petition debt or relinquish the collateral, just as he or she chooses to incur or forego a post-petition expense. Thus, contrary to the *Jones* court's opinion, there is no reason to use two very different tests—the good faith test and the disposable income test—to judge the appropriateness of two quite similar obligations—pre-petition debts and post-petition expenses.

Third, the *Jones* court emphasizes that Chapter 13 of the Bankruptcy Code was created so that debtors could retain their assets and pay their creditors over a period of time. *Jones*, 119 B.R. at 1001. The *Jones* court opines that interpreting § 1325(b) in such a way that it applies to pre-petition debts causes the statute to favor those debtors whose financial problems arise out of an inability to pay for their basic needs and punish those debtors whose problems stem from their excessive

---

bered asset that might be considered a luxury or unnecessarily extravagant, unless unsecured creditors are to be paid in full. *Jones*, 119 B.R. at 1001.

**2.** Section 1325(a)(3) of the Bankruptcy Code states: "Except as provided in subsection (b),

the court shall confirm a plan if ... the plan has been proposed in good faith and not by any means forbidden by law...." 11 U.S.C. § 1325(a)(3) (1991).

expenditures for unnecessary items, because the latter debtors are not permitted to retain all of their existing assets. *See id.* By applying the statute to pre-petition debts, however, all debtors *and* creditors proceed on a level playing field, because all debtors, no matter how they got into bankruptcy, may only incur expenses or pay debts on items that are reasonably necessary for their support. Under the *Jones* analysis, a debtor could pay a debt on an unnecessary item purchased prior to bankruptcy through his or her plan to the detriment of the unsecured creditors, as long as the debtor showed he or she proposed the plan in good faith. *See Reyes,* 106 B.R. at 157 (The disposable income and good faith requirements are different, so a failure to fulfill the disposable income requirement does not necessarily mean the plan was not proposed in good faith.).

The debtors in this case, like the court in *Jones,* assert that the purpose of Chapter 13 is to permit them to reorganize their debts and retain their *existing* assets which is what they propose to do through their plan. *See Rogers,* 65 B.R. at 1020. Debtors state they can include in their plan the debt owed on the camper as long as they propose to pay in full the value of the collateral. The debtors, as well as the *Jones* court, correctly state the purpose of Chapter 13. In a Chapter 13 case, however, a debtor reorganizes debts not only for his or her own benefit, but also for the creditors' benefit. Allowing a debtor to reorganize his or her debts under Chapter 13 does not necessarily mean the debtor will be able, or permitted, to maintain the status quo or retain the collateral which secures a debt, especially when that debtor cannot pay 100% of the claims through his or her plan. *See Rogers,* 65 B.R. at 1021 ("It's the *payment* [of the debt on the asset]—not the possession of an asset—which is material in an objection under § 1325(b)."). In addition, although a debtor may reorganize his or her existing debts under Chapter 13, the debtor cannot ignore the statutory provisions of Chapter 13 when doing so. The provisions of Chapter 13 specifically require that a debtor apply all of his or her disposable income toward the plan.

Debtors' argument that the unsecured creditors will receive at least as much as they would under Chapter 7 is irrelevant. Although § 1325(a)(4) requires that unsecured creditors receive no less than they would have received under Chapter 7, 11 U.S.C. § 1325(a)(4), § 1325(b) is a separate requirement with which debtors must also comply. *In re Willingham,* 83 B.R. 552, 553–54 (Bankr.S.D.Ill.1988); *Reyes,* 106 B.R. at 158.

Finally, debtors assert they are not required to put all of their disposable income into the plan. Debtors contend some bankruptcy courts allow debtors a cushion of up to $100 in their monthly budgets. Debtors claim that if they cannot pay for the camper through the plan, they could choose to put $148.00 of their $248.00 in monthly disposable income towards their plan, and use their cushion of $100 to pay the debt on the camper outside the plan. Debtors thus contend the amount the unsecured creditors would receive would not necessarily increase if the debtors had to exclude the camper from the plan.

■ In some cases, courts have permitted debtors a certain cushion in their monthly disposable income and have not required debtors to pay all of their disposable income into the plan, especially if the debtors proposed to pay a significant portion of their disposable income into the plan, if the debtors had especially frugal budgets, or if the debtors had not allocated any money in their budgets for essential or emergency expenses. *See In re Crompton,* 73 B.R. 800, 808–09 (Bankr.E.D.Pa. 1987); *In re Greer,* 60 B.R. 547, 552–53 (Bankr.C.D.Cal.1986). This Court, however, is unaware of any specific rule in this district which allows debtors an *automatic* cushion of $100 in their monthly budgets. Additionally, in this case, debtors propose to pay all of their disposable income into the plan, thereby signaling that they are able to do so. Should the debtors propose an amended plan into which they would pay only about 60% of their disposable income, a question could arise regarding the debt-

ors' good faith in proposing the plan inasmuch as such action, without other evidence, could reflect an intent to circumvent § 1325(b).

For all of these reasons, the Court holds that both projected post-petition expenses and pre-petition secured debts are subject to scrutiny under the disposable income test of § 1325(b). The debtors have not contended or shown that the camper is a reasonably necessary expense as required by § 1325(b). Moreover, the Court can discern no independent reason why the camper would constitute a necessity.

■ An additional factor, although not dispositive of the issue before the Court, concerns the difference in the amount the debtors could pay on the balance owed the unsecured creditors if the debtors surrendered the camper.[3] If the debtors exclude the debt on the camper from their plan and relinquish the collateral, they could put at least another $4,644.20, the amount they would have paid on the camper through the plan, towards their unsecured debts, thereby paying approximately 96% of those debts or at least substantially more than the 10% they now propose to pay on those debts. "A fundamental purpose of the disposable income provision is to prevent large expenditures by debtors for non-essential items which ultimately reduce the sum available to pay holders of unsecured claims." *Hedges*, 68 B.R. at 20. The percentage the debtors could pay toward the unsecured claims would rise substantially if they did not make payments on the camper, even though they owe a relatively small amount on the camper. Therefore, applying the disposable income provision in this instance fulfills the purpose of the statute.

The Court does not wish to deny the debtors their camper, but the Court cannot ignore the requirements of the Bankruptcy Code. Debtors in Chapter 13 must undergo some belt-tightening. *See Jones*, 119 B.R. at 1000; *Reyes*, 106 B.R. at 159. The Court cannot permit the debtors to pay a debt on a camper they do not need while the unsecured creditors receive only 10% of their claims. *See Reyes*, 106 B.R. at 158;

*Hedges*, 68 B.R. at 20–21. Consequently, the Court holds that the camper is not a reasonably necessary expense and the debtors have not fulfilled the disposable income requirement of § 1325(b). Thus, the trustee's objection to the confirmation of debtors' plan is sustained.

Also before the Court is an objection by Lindsey's, Inc. (Lindsey's). Although the debtors entered into a contract on the camper with Boatmen's, the contract has a recourse provision which provides that Lindsey's is liable on the contract to the extent the debtors default on it by not making their full monthly contract payments to Boatmen's. Lindsey's argues that because the plan fails to provide that Boatmen's will receive the full monthly payments due it under the contract, Lindsey's is not adequately protected under the plan.

The Court has denied confirmation on the basis that the debtors may not pay the debt on the camper through the plan. Therefore, Lindsey's objection is overruled as moot.

In conclusion, the trustee's objection is sustained. The objection of Lindsey's, Inc. is overruled. Debtors are granted twenty days within which to file an amended plan to cure the trustee's objection.

See written order entered this date.

---

3. The amount paid to unsecured creditors is not an element of the reasonably necessary test.