**In re Rebecca L. GIBSON, a/k/a Rebecca Kapur, a/k/a Rabecca Townsend a/k/a Rebecca Gibson, Debtor.**

**In re Nancy MOORE, Debtor.**

**Bankruptcy Nos. 92–42618–399, 92–40847.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

June 18, 1992.

Eric Taylor, St. Louis, Mo., for Nancy Moore.

Shirley W. Ovletrea, St. Louis, Mo., for Rebecca Gibson.

Howard S. Smotkin, St. Louis, Mo., for GMAC.

John V. LaBarge, Jr., Kirkwood, Mo., Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

These otherwise unrelated cases present a common question of law. The issue presented is whether a Chapter 13 plan may be confirmed when the plan provides less than full payment to unsecured creditors while permitting the debtor to retain a luxury automobile by paying for the vehicle through the plan. The Chapter 13 Trustee and General Motors Acceptance Corp. ("GMAC") have objected to confirmation of these plans on the grounds that the debtors have failed to devote all of their disposable income to the plan. As a result, the Trustee and GMAC assert that the plans do not reflect the best efforts of the debtors under § 1325(b)(1)(B) and that the plans are not proposed in good faith pursuant to § 1325(a)(3).

### JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. The parties have stipulated that this is a "core proceeding" which the Court may hear and enter appropriate judgments pursuant to 28 U.S.C. § 157(b)(2)(L).

### FACTS

A. *In re Nancy Moore—The Cadillac Case*

In her Chapter 13 schedules Nancy Moore ("Ms. Moore") lists unsecured debt

in the amount of $31,741.58 and secured debt in the amount of $68,848.02. Ms. Moore's secured debt consists of a first and second mortgage on her house and a retail installment sales agreement with GMAC secured by Ms. Moore's 1991 Cadillac Deville. Ms. Moore purchased the Cadillac for $29,034.80 approximately seven months before she filed her Chapter 13 petition. According to the Debtor's schedules, the car now has a fair market value of $19,175.00. The Debtor owes GMAC a balance of $23,339.89. Although Ms. Moore has in excess of $31,000.00 in unsecured debt (primarily credit card debt), she is current on her car payments.

Ms. Moore's monthly income is $2,454.00, consisting of Social Security benefits ($407.00 per month), Veteran's Association benefits ($727.00 per month), and income from boarders residing at her home ($1,320.00 per month). Her monthly living expenses are $1,874.00. This figure, however, does not include Ms. Moore's regular monthly payment of $636.38 for her Cadillac. By excluding the Cadillac from her list of monthly expenses, Ms. Moore has excess income over expenses in the amount of $580.00 per month. Conversely, by including the Cadillac in her monthly budget, Ms. Moore has a monthly deficit of $56.38.

Ms. Moore proposes to retain the Cadillac by making monthly payments of $580.00 to the Trustee for a period of 60 months. Under the Debtor's plan, unsecured creditors will receive approximately 12 cents on the dollar. The Trustee will make the first distribution to unsecured creditors around the 34th month of the plan.

*In re Rabecca L. Gibson—The Corvette Case*

In her Chapter 13 schedules Rabecca L. Gibson ("Ms. Gibson") lists unsecured debt in the amount of $26,248.02. Her only secured debt is an obligation to GMAC secured by the Debtor's 1991 Corvette. Ms. Gibson purchased the Corvette for $36,844.00 approximately 8 months before she filed her Chapter 13 petition. Ms. Gibson made a $9,000.00 downpayment at the

time of purchase. According to the Debtor's schedules, the Corvette now has a fair market value of $24,375.00. The Debtor owes GMAC a balance of $27,000.00.[1] Shortly before the Debtor filed her Chapter 13 petition, GMAC repossessed the Corvette, and the car remains in GMAC's possession.

Ms. Gibson's monthly income is $1,600.00. Her monthly living expenses are $790.33. These expenses, however, do not include Ms. Gibson's regular monthly payment of $749.48 for the Corvette. By excluding the Corvette payment from her list of monthly expenses, Ms. Gibson has excess income over expenses of approximately $800.00.

Ms. Gibson proposes to retain the Corvette by making payments of $800.00 per month to the Trustee for a period of 50 months. Under the Debtor's plan, unsecured creditors will receive approximately 21 cents on the dollar. The Trustee will make the first distribution to unsecured creditors around the 34th month of the plan.

## DISCUSSION

### Disposable Income "Best Efforts" Test

Under § 1325(b)(1)(A) a Chapter 13 plan cannot be confirmed over the objection of an unsecured creditor or the Trustee unless the plan provides that unsecured creditors will receive 100% of the amount of their claim. Alternatively, under § 1325(b)(1)(B) the plan may be confirmed if it provides that all of the debtor's projected disposable income will be applied to make payments under the plan. This is the "best efforts" test. Specifically, § 1325(b)(1) states:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
>
> > (A) the value of the property to be distributed under the plan on account

---

**1.** In a motion for relief from the automatic stay GMAC asserts that its claim approximates $32,-380.00.

of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

"Disposable income" for purposes of § 1325(b)(1)(B) is defined as "income which is received by the debtor and which is not *reasonably necessary* to be expended for the maintenance or support of the debtor or a dependent of the debtor." (§ 1325(b)(2)(A) emphasis added).

Although numerous courts have previously considered whether a Chapter 13 debtor may retain and pay for a luxury vehicle or other property deemed "not reasonably necessary" for the debtor's maintenance and support while the debtor pays unsecured creditors less than 100% through a Chapter 13 plan, the question has not yet been presented in this jurisdiction. There are two legal theories under which this issue has been addressed: the "good faith" standard of § 1325(a)(3) and the "best efforts" or "disposable income" test of § 1325(b)(1)(B). The majority of courts which have reviewed this issue have analyzed it under the "best efforts" or "disposable income" test of § 1325(b)(1)(B). *See, In re Reyes,* 106 B.R. 155 (Bankr.N.D.Ill. 1989) (where the debtor attempted to retain a four-wheel-drive Chevrolet Blazer by making payments on it through his plan while paying his unsecured creditors 10%); *In re Hedges,* 68 B.R. 18 (Bankr.E.D.Va. 1986) (debtor attempted to keep a Chapparell boat and proposed payment of 45% to unsecured creditors); *In re Rogers,* 65 B.R. 1018 (Bankr.E.D.Mich.1986) (debtor attempted to keep a Corvette while paying unsecured creditors 17%); and *In re Rybicki,* 138 B.R. 225 (Bankr.S.D.Ill.1992) (debtor attempted to keep a camper/trailer and proposed a 10% distribution to unsecureds).

An opposite line of authority holds that analysis under the disposable income test of § 1325(b) is inappropriate because the Bankruptcy Code does not impose a "reasonable necessity" test upon pre-petition obligations which the debtor intends to pay through the Chapter 13 plan. *In re Jones,* 119 B.R. 996, 1001 (Bankr.N.D.Ind.1990). In *Jones,* Judge Robert E. Grant explained:

Section 1325(b) was not enacted to discriminate between debtors whose financial problems arose out of an inability to pay for the necessities of life and those whose problems are attributable to more conspicuous consumption.... If it did, then every debt being serviced under a proposed plan would potentially need to survive such scrutiny. *Id.*

According to the analysis in *Jones,* the disposable income test requires only that a debtor apply all of his income in excess of that needed for reasonably necessary living expenses to the plan. It does not require that debts paid through the plan also be reasonably necessary expenses. Thus, a debtor who submits all of his excess income to his plan, automatically meets the disposable income test of § 1325(b)(1)(B) regardless of the nature and extent of the debts to be paid through the plan. Under *Jones,* the disposable income test simply is not applicable to a determination of the appropriateness of the use of plan payments. Rather, *Jones* holds that a determination as to the appropriateness of payments under a plan should be made under the "good faith" test of § 1325(a)(3).

This Court feels the disposable income test is relevant and agrees with the majority of cases which use the disposable income test to determine whether a Chapter 13 plan may be confirmed when the plan permits retention and payment for a luxury vehicle while paying unsecured creditors less than 100% of their claims. The majority reasons that analysis under § 1325(b)(1)(B) is appropriate because *both* pre-petition debts and post-petition expenses affect a debtor's disposable income. In *Rybicki,* Judge Meyers explained:

A pre-petition debt affects disposable income because payment of the debt through the plan reduces the amount of disposable income otherwise available for the remaining pre-petition debts the debtor is paying off through the plan, including debts owed to unsecured creditors.

Disposable income is also affected by a debtor's payment of a post-petition expense because the expense is included in the debtor's list of budgeted expenses and subtracted from the debtor's gross income to determine the debtor's disposable income.

*In re Rybicki,* 138 B.R. at 227.

This Court feels the majority's analysis reflects the reality of the situation. A Chapter 13 debtor who uses post-petition income to pay for a luxury vehicle, whether he pays for that vehicle "inside" or "outside" of the plan, does not apply all of his disposable income to payments of other debts under the plan. Debtors argue that because they have committed all of their excess income to the plan that they meet the requirements of § 1325(b)(1)(B). This argument and the *Jones* analysis are unpersuasive because regardless of whether payments for a luxury item are made through the plan or not, those payments reduce the limited resources which the debtor has available to pay other unsecured creditors. The bankruptcy court in *In re Heverly,* 68 B.R. 21, 22 (Bankr.M.D.Fla. 1986) articulately stated the weakness in the Debtors' reasoning. The court explained:

If this sort of reasoning were accepted, any debtor who wished to avoid the provisions of § 1325(b) could simply purchase property not reasonably necessary for maintenance and support, provide for its payment under the plan, and build equity in that property to the detriment of the general unsecured creditors of the estate who would otherwise receive a larger dividend.

This Court will not permit a debtor to accomplish through a Chapter 13 plan that which the debtor could not achieve outside of the plan by virtue of a technicality. Indeed, had either Ms. Moore or Ms. Gibson included their car payments in their schedule of monthly expenses, the court would have entertained and granted an objection under § 1325(b)(1)(B) as to the reasonable necessity of those expenses. Ms. Gibson's monthly payment on her Corvette nearly equals the total of all her other expenses combined, and Ms. Moore's expense for her Cadillac amounts to almost one third of all her other expenses. Such expenses, while they may be desirable to the Debtors, are not reasonably necessary expenses for the Debtors' maintenance and support.

Chapter 13 is designed to permit a debtor with regular income to pay his or her debts and retain his or her assets. However, a Chapter 13 debtor who is not able to pay its unsecured creditors in full should be expected to demonstrate a degree of belt tightening. *In re Jones,* 55 B.R. 462, 465 (Bankr.D.Minn.1985). It is an affront to this Bankruptcy Court to conceive of a debtor making significant monthly payments for an item that the debtor *wants* but does not *need* while his unsecured creditors go unpaid for more than thirty months, and then, when they finally begin receiving payments, collect only cents on the dollar.

The Court is mindful that it may not use denial of confirmation to impose its values on a debtor's spending habits (*In re Navarro,* 83 B.R. 348, 355 (Bankr.E.D.Pa.1988)), nor should the Court "squeeze the last dollar" from a debtor to fund his or her Chapter 13 plan. *In re Otero,* 48 B.R. 704, 708 (Bankr.E.D.Va.1985). However, debtors in Chapter 13 cases are not entitled to maintain their former lifestyles and statuses in society at the expense of their creditors. *In re Jones,* 55 B.R. 462, 446–467 (Bankr.D.Minn.1985). The Court perceives these Debtors to be doing exactly that—retaining their former lifestyle by paying for their luxury vehicles through their Chapter 13 plans.

The Court is also mindful that any determination as to what items a debtor may retain and pay for through his Chapter 13 plan and what items the debtor may not retain because payment for them would artificially reduce the debtor's disposable income is a purely subjective determination. Ms. Moore's counsel cautions that such a subjective determination embarks the court on the "slippery slope" of having to decide the appropriateness of a veritable plethora of payment issues. The Court agrees that it may be setting the stage for extensive litigation on such matters, but

simply cannot permit a plan to be confirmed where the debtor's plan includes expenditures for luxury items while his unsecured creditors receive substantially less than full payment. Accordingly,

IT IS ORDERED that the Objections of the Trustee and GMAC to confirmation of Ms. Moore's and Ms. Gibson's Chapter 13 plans on the grounds that the debtors have failed to apply all of their disposable income to the plan pursuant to § 1325(b) are sustained.[2]

IT IS FURTHER ORDERED that the Debtors are granted twenty days from the date of this Order to submit amended plans, dismiss their cases or convert their cases to ones under another chapter of the Bankruptcy Code.

---

**2.** Because the Court decides these cases on the basis of § 1325(b), it need not determine also whether the plans also violate the broader standard of "good faith" contained in § 1325(a)(3).