BOWNES, Circuit Judge.
 

 This is an appeal
 
 [1]
 
 by the- Asociación de Empleados del Estado Libre Asociado de Puerto Rico (Asociación) from a decision of the District Court of Puerto Rico holding that a debtor’s prepetition authorization of deductions from future wages in favor of the Asociación for a loan received from it was a debt dischargeable in bankruptcy. The court ordered the Asociación to cease making payroll deductions from the debt- or’s salary and to reimburse the debtor for all such deductions made subsequent to the date of the filing of the bankruptcy petition.
 

 The Asociación appeals on two grounds: that it is a secured creditor because it has a continuing lien on the bankrupt’s future wages, and that the unpaid obligation is not a dischargeable debt within the meaning of the Bankruptcy Code. We affirm.
 

 Enio Miranda Soto, the debtor-bankrupt, is an employee of the State Department of the Commonwealth of Puerto Rico. As a government employee, Miranda is a member of the Asociación, a nonprofit organization authorized by statute to lend money to government employees.
 
 [2]
 
 P.R.Laws Ann. tit. 3 ch. 35. The funds for the loans are obtained by a compulsory three percent deduction from the salaries of government employees.
 
 Id:
 
 § 862g. In order to obtain a loan from the Asociación, the borrowing employee is required to execute a promissory note assigning a certain percentage of his future wages to the Asociación. When the note is executed, the Asociación notifies the payroll officer of the agency where the employee works and the authorized deductions are made.
 
 Id.
 
 §§ 862f & 683.
 

 Miranda obtained a $6,775 loan from the Asociación on April 4, 1979, and executed a note authorizing a monthly payroll deduction of $144.35. On October 22, 1979, Mi
 
 *237
 
 randa filed a Chapter VII petition in bankruptcy, 11 U.S.C. §§ 701-766. An order of discharge was entered March 19, 1980, by the bankruptcy court. On June 23 it ruled that the Asociación was an unsecured creditor and ordered the cessation of payroll deductions from Miranda and the repayment to him of all such deductions made after the date of filing of the Chapter VII petition. The district court affirmed on March 9, 1981.
 

 The question of whether a wage assignment gives rise to a continuing lien is well settled. The accepted rule is that the assignment of future wages as security for a present debt does not constitute a lien within the meaning of the Bankruptcy Code.
 
 Local Loan Co. v. Hunt,
 
 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934);
 
 Seaboard Small Loan Corp. v. Ottinger,
 
 50 F.2d 856 (4th Cir. 1931);
 
 In re Morris,
 
 333 F.Supp. 204 (E.D.Mich.1971);
 
 see also
 
 1A Collier on Bankruptcy § 17.30 (14th ed. 1978).
 

 An assignment of wages can create a bankruptcy lien only when the wages have already been earned by the debtor.
 
 In re Dykes,
 
 326 F.Supp. 998, 1001 (D.Kan.1970);
 
 In re West,
 
 127-28 F.R. 205 (D.Or. 1904). The reason for not allowing a lien on future earnings to survive bankruptcy was well stated by the Supreme Court.
 

 The earning power of an individual is the power to create property; but is is not translated into property within the meaning of the bankruptcy act until it has brought earnings into existence. An adjudication of bankruptcy, followed by a discharge, releases a debtor from all previously incurred debts, with certain exceptions not pertinent here; and it logically cannot be supposed that the act nevertheless intended to keep such debts alive for the purpose of permitting the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective or even arising from, or connected with, preexisting property, but brought into being solely as the fruit of the subsequent labor of the bankrupt.
 

 Local Loan Co. v. Hunt,
 
 292 U.S. at 243, 54 S.Ct. at 698-99.
 

 Appellant argues that under the new Bankruptcy Code the definition of “lien” is more comprehensive than under the former law and should be given broad effect. There is nothing in the new code that suggests, even faintly, that assignments of future earnings may create a lien that will withstand bankruptcy. Indeed, this would run counter to the “fresh start” philosophy of the new code, the heart of which is found in 11 U.S.C. § 727. Moreover, 11 U.S.C. § 552(a) provides specifically, “property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.”
 

 Appellant also attempts to invoke § 9-204 of the Uniform Commercial Code, which recognizes the principle of a continuing or floating lien. In addition to the obvious fact that § 9-204 of the U.C.C. has nothing to do with the assignment of wages, the U.C.C. has not been adopted by the Commonwealth of Puerto Rico. The U.C.C. is of no help to appellant.
 
 [3]
 

 Appellant’s nondischargeable debt argument is as follows. Miranda is by virtue of his compelled three percent .contribution a co-owner, along with all other government employees, of the loan fund and, therefore, the “loan” was really an advance to him of his own money. Thus there is no “debt” within the meaning of 11 U.S.C. § 101(11)
 
 [4]
 
 and nothing to discharge under 11 U.S.C. § 727. As authority for this “no debt” theory, appellant cites
 
 In re Villarie,
 
 648 F.2d 810 (2d Cir. 1981). In
 
 Villarie
 
 the court held that a loan from the New York City Employees’ Retirement Sys
 
 *238
 
 tem to a member was not a “debt” dis-chargeable in bankruptcy and that the System had a right to deduct from a member’s weekly compensation an amount sufficient to recoup the loan, notwithstanding the member’s filing in bankruptcy. In reaching its decision, the court pointed out that the amount of a loan to a member of the System could not exceed fifty percent of that employee’s previous contribution to the fund. The court concluded that “this disbursement is an advance against the member’s future retirement benefits.”
 
 Id.
 
 at 811. This was so, the court said, because if a member failed to repay the advance before retirement, his benefits would be reduced by the amount of the outstanding balance or, if a member resigned his city employment, the unpaid sum was deducted from the amount due him from the System. The System, however, had no right to sue a member for advances. The court reasoned that this was analogous to two transactions that, under the old Bankruptcy Act, did not create a debtor-creditor relationship: an annuitant’s withdrawal from the saving account of his annuity fund; and an insured’s advance from the reserve fund of his insurance policy.
 
 Id.
 
 at 812. Under this analysis, the court ruled that the System did not have a right to payment under 11 U.S.C. § 101(4)(A)
 
 [5]
 
 and that there was no “debt” within the meaning of 11 U.S.C. § 101(11).
 
 Id.
 

 Villarie
 
 does not apply because the operative facts are different. There is no requirement under the Asociación system that a loan to a member be limited to a percentage of his contributions to the fund. The Board of Directors of the loan fund are authorized “to grant personal and mortgage loans to employees and pension-covered members at a rate of interest not exceeding seven percent (7%) per annum, with such security and margin, and under such amortization terms as may, by regulation, be established.” P.R.Laws Ann. tit. 3 ch. 35, § 862f(a). The use of the phrase “with such security and margin” connotes a lender-borrower relationship, not an “advance” of a portion of monies previously deposited. Miranda may be a part owner of the loan fund, but he has borrowed not only from himself, but from all other members of the Asociación. We find nothing in the Bankruptcy Code that suggests that the loan did not create a debt that was dischargeable in bankruptcy.
 

 We can understand appellant’s concern, especially since Miranda has brought suit in the Superior Court of the Commonwealth asserting that he has a right to another loan from the Asociacion,
 
 Enio Miranda Soto v. Employees Association of the Commonwealth and/or John Doe, as Director of the Loan Department,
 
 Civil Number: PE 81-1246 (906), Superior Court of Puerto Rico (August 6,1981), but the answer, if any, lies with the legislature or the court of the Commonwealth, not in the Bankruptcy Code.
 

 Affirmed.
 

 [1]
 

 . Only the appellant has filed a brief.
 

 [2]
 

 . The Asociación also operates a life insurance program for Commonwealth employees.
 

 [3]
 

 .
 
 Selby v. Ford Motor Co.,
 
 590 F.2d 642 (6th Cir. 1979), cited by appellant, is inapposite. That case concerned “the recognition federal bankruptcy law should give to state-created property rights under the Michigan Builders Trust Fund Act.”
 
 Id.
 
 at 643.
 

 [4]
 

 . 11 U.S.C. § 101(11) provides that “‘debt’ means liability on a claim[.]”
 

 [5]
 

 . 11 U.S.C. § 101(4)(A):
 

 “claim” means—
 

 (A) right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, unma-tured, disputed, undisputed, legal, equitable, secured, or unsecured].]