**In re Wayne Curtis HEDGES, Debtor.**

**Bankruptcy No. 86–01540–R.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Nov. 18, 1986.

---

Leonard E. Starr, III, Sandston, Va., for debtor.

Douglas O. Tice, Jr., Richmond, Va., Trustee.

MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter came before the Court on October 8, 1986 upon a hearing to consider confirmation of the debtor's Chapter 13 plan and upon the objection to confirmation by the Chapter 13 trustee. The Court,

---

1. *In re Thompson*, 59 B.R. 690 (Bankr.W.D.Tex. 1986).

having heard the argument of counsel for the debtor and the trustee and having reviewed the relevant Code provisions and case law, makes the following determinations.

## FINDINGS OF FACT

The debtor, Wayne Curtis Hedges, filed a petition seeking relief under Chapter 13 of the Bankruptcy Code on August 20, 1986. The debtor's plan, also filed with this Court on August 20, 1986, proposes to pay the trustee the sum of $140.00 a month over a period of no less than 36 months but not to exceed 58 months. It further proposes to pay the unsecured creditors of the estate a total of $7,240.00 under the plan, which is approximately 45% of the outstanding unsecured debt.

The debtor is presently employed as a manufacturing superintendent at Philip Morris, Inc., where his current monthly net income totals $2,313.00. The debtor's listed monthly expenditures, as estimated by him, total $2,313.00. Included among these expenditures is a payment of $187.61 to Central Fidelity Bank pursuant to a security agreement enabling the debtor to purchase a 1984 Chapparell boat. The debtor's Chapter 13 statement lists the value of the boat as $9,000.00 and the amount of Central Fidelity Bank's claim as $11,200.00.

## CONCLUSIONS OF LAW

The Chapter 13 trustee has objected to confirmation of the debtor's plan on the basis that it proposes that the debtor retain and continue payment for an apparent luxury item—the 1984 Chapparell boat. As such, the trustee contends that the plan is not confirmable since it indicates a failure on the part of the debtor to devote all of his disposable income to payments under the plan as required by 11 U.S.C. § 1325(b).

Counsel for the debtor asserts that even if the boat is deemed to be a luxury item and, thus, not reasonably necessary for his support, the monthly payment to Central Fidelity Bank is provided for through the plan, and, therefore, all of the debtor's disposable income is being applied to make payments under the plan.

The relevant portions of § 1325(b) provide:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, 'disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor . . .

This section, added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, gives the Court discretion to deny confirmation to a Chapter 13 plan which does not provide for payment into the plan of all the debtor's projected disposable income for the three-year period beginning on the date the first plan payment is due. *See In re Otero*, 48 B.R. 704, 708 (Bankr.E.D.Va.1985). Consequently, under the definition of disposable income which appears in § 1325(b)(2)(A), the Court may deny confirmation whenever the debtor fails to devote to the plan 100% of his income over and above that amount reasonably necessary for support or maintenance. The Court's initial task, then, is to determine which of the debtor's monthly expenses are reasonably necessary and which ones are non-essential.

The case law interpreting § 1325(b) is sparse and the legislative history accompanying that section offers little guidance as to what is meant by the term "reasonably necessary." At least one court, however, has formulated a working definition by reference to similar terms and uses in other parts of the Bankruptcy Code. *In re*

*Jones,* 55 B.R. 462, 13 B.C.D. 1116 (Bankr. D.Minn.1985).

In *Jones,* the Court examined § 523(a)(2)(C) and § 522(d)(10)(E), both of which contain language which parallels the wording of § 1325(b). Section 523(a)(2)(C) excepts from discharge certain consumer debts for "luxury goods or services" incurred immediately prior to the entry of an order for relief. Luxury goods or services, the provision explains, "do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependant of the debtor." Under § 522(d)(10)(E), the debtor may exempt from property of the estate certain benefit payments "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." This provision was interpreted in *In re Taff,* 10 B.R. 101 (Bankr.D.Conn.1981), where the court indicated that the reasonably necessary standard should equate to an amount "sufficient to sustain basic needs [without reference to the debtor's] former status in society or the lifestyle to which he is accustomed." *Id.* at 107.

This Court is satisfied in the instant case that, since the debtor's occupation does not require its use, the 1984 Chapparell boat constitutes a luxury item which is not reasonably necessary for the debtor's support or maintenance. A fundamental purpose of the disposable income provision is to prevent large expenditures by debtors for non-essential items which ultimately reduce the sum available to pay holders of unsecured claims. 5 Collier on Bankruptcy ¶ 1325.08 (15th ed. 1985). Under the debtor's proposed plan in this case, the unsecured creditors, who are scheduled to receive only a 45% payout on their claims, would be deprived of $187.61 monthly, or a total of $6,753.96 during the first three years of the plan, by virtue of the debtor's retention of and payment for the boat. Of course, were Central Fidelity Bank allowed to recover and liquidate its collateral and were it privileged to file a proof of claim for any deficiency, it would share in distribution to unsecured creditors.

The Court's finding is in accord with the few bankruptcy court decisions which have had occasion to interpret § 1325(b) since its enactment. In *In re Jones,* 55 B.R. 462, 13 B.C.D. 1116 (Bankr.D.Minn.1985) an unsecured creditor objected to confirmation of the debtor's plan, asserting that the debtor's listed expenditures for his children's private school tuition were not necessary support or maintenance within the meaning of § 1325(b) and, therefore, the debtor had not devoted all of her projected disposable income to the plan. The Court denied confirmation, finding that since public schools were available, a private school education was not a basic need of the debtor's children. Reducing the monthly tuition expenses left the debtor with excess disposable income that was not being paid into the plan, and as such, the requirements of § 1325(b) were not met.

Likewise, in *In re Festner,* 54 B.R. 532, 13 B.C.D. 941 (Bankr.E.D.N.C.1985) the court denied confirmation of a 42% pay out plan which provided for two weekly payroll deductions totalling $47.00 and a monthly payment of $85.00 in satisfaction of a loan. The court reasoned that, although the expenditures of $25.00 a week for voluntary retirement benefits, $22.00 a week to purchase stock under an employee stock option plan, and $85.00 a month to repay a loan secured by shares of stock were desirable and wise from the debtor's point of view, they were "certainly not necessary." *Id.* at 533, 13 B.C.D. at 942. Therefore, the aggregate sum of these payments constituted disposable income which, if made available to creditors under the plan, would result in an 82% payout on their unsecured claims.

This Court is mindful of the debtor's concern with improving his financial status and maintaining his personal well-being; however, it will not permit him to acquire goods or services not reasonably necessary for support at the expense of unpaid, unsecured creditors. The purposes of § 1325(b) would be ill-served if the Court were to allow the debtor in the instant case to retain possession of purely recreational

property not reasonably necessary for maintenance or support of the debtor or his dependents while his general unsecured creditors are to receive, over an extended period of time, less than half of the total amount of their claims.

The debtor has argued that, since payment for the boat is provided for *through* the plan, all of his disposable income is being applied to make payments under the plan. Thus, he urges, the requirements of § 1325(b) have been met. This argument is not well taken. If this sort of reasoning were accepted, any debtor who wished to avoid the provisions of § 1325(b) could simply purchase property not reasonably necessary for maintenance and support, provide for its payment under the plan, and build equity in that property to the detriment of the general unsecured creditors of the estate who would otherwise receive a larger dividend. It is this Court's opinion that Congress did not intend to allow such conduct by individuals in financial straits.

Accordingly, for the reasons thus stated, the Court finds that all of the debtor's projected disposable income is not being devoted to payments under the plan and confirmation is denied on that basis.

An appropriate Order will issue.