**In re Charles Edward LINDSEY et ux., Debtors.**

**Bankruptcy No. 90–02222–BKC–6C3.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Jan. 3, 1991.

Andrew Baron, Orlando, Fla., for debtors.

Richard Palmer, Winter Park, Fla., Trustee.

## MEMORANDUM OPINION

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

THIS CASE came on for confirmation hearing on November 20, 1990, to consider confirmation of a Chapter 13 plan. The Chapter 13 trustee filed a "recommendation" that confirmation of the plan be denied (Document No. 8) on the ground that the debtors propose to make payments through the plan on a 40–acre parcel of non-income producing investment real property. The court will treat the "recommendation" as an objection to confirmation.

The trustee reiterated this objection at the hearing on confirmation.

The plan proposed by the debtors (Document No. 10A) provides for payments of $400 per month for 50 months. For the first 12 payments, the trustee is to distribute $318.75 of the $400 payment to the holder of a mortgage on the non-income producing investment property and $57.25 to the Internal Revenue Service. After the completion of the payments on the first mortgage and beginning with the 13th plan payment, the payments to the Service are increased to $376 per month through the 34th plan payment. Beginning with the 35th plan payment, the entire monthly payment, after administrative expenses, is to be applied to unsecured claims. The plan contemplates that a total amount of $5,640 will be paid on allowed unsecured claims, which the trustee calculates to be approximately 47 percent of the unsecured claims.

### Disposable Income

■ This plan cannot be confirmed over the objection of the trustee, pursuant to Section 1325(b)(1)(A) or (B) of the Bankruptcy Code, because it does not provide for a 100 percent payment of the claims, nor does it, in reality, commit all of the debtors' disposable income to the plan. While the plan does purport to commit all of the debtors' disposable income to the plan, a substantial portion of the first 12 payments are committed to improving the debtor's equity position and, with the 12th payment, to pay off the mortgage on the debtors' investment property. Although investments may be financially prudent, they certainly are not necessary expenses for the support of the debtors or their dependents. *In re Festner*, 54 B.R. 532, 533 (Bankr.E.D.N.C.1985). Investments of this nature are therefore made *with* disposable income; disposable income is not what is left after they are made. Thus, the court may not and should not permit the debtors to use a Chapter 13 plan to retain and increase their equity in investment property at the expense of their unsecured creditors.

The fact that these payments for the financial benefit of the debtors are made through the plan, as distinguished from made directly to the secured creditor outside a plan, is not sufficient to bring the plan into compliance with Section 1325(b)(1)(B). *In re Hedges*, 68 B.R. 18, 21 (Bankr.E.D.Va.1986); *In re Rogers*, 65 B.R. 1018, 1022 (Bankr.E.D.Mich.1986). *Contra In re Jones*, 119 B.R. 996, 1001–02, 20 B.C.D. 1829, 1832 (Bankr.N.D.Ind.1990).

### Bad Faith

■ At least one court has taken the position that payments on luxury items made through a plan do not in themselves conflict with the disposable income requirements of Section 1325(b)(1)(B). Instead, that court holds, the inclusion of luxury items in the plan is a matter to be considered together with all the circumstances of the case in determining whether the plan has been filed in good faith within the meaning of Section 1325(a)(3) of the Bankruptcy Code. *Jones, supra* at 1001–02, 20 B.C.D. at 1832. Approaching this plan from that perspective causes the court to conclude that this plan fails the good faith requirement, as well.

The debtors previously filed a Chapter 13 case in this court on June 14, 1989. Case No. 89–02030–BKC–6C3. That case was dismissed on April 30, 1990. After paying administrative expenses, the trustee then refunded to the debtors accrued payments in the amount of $3,361.68. The current case was filed on June 11, 1990. Although less than a month and a half had passed since the previous case had been dismissed, the debtors failed to list the refund in their schedules in this case. At the confirmation hearing on November 20, 1990, the debtors, through their counsel, gave conflicting, inconsistent, and unreliable explanations as to the then current status and disposition of those refunded monies. In addition, the debtors failed to give an acceptable reason for their failure to list the refund as an asset on their schedules, nor did they propose to commit those funds or the remaining portion of them to the current plan.

The debtors' counsel advised the court that there is approximately $4,000 of equity in the investment real property. The debtors do not propose to sell or in any other respect use that equity for the benefit of their creditors. Neither do they propose to return the property to the mortgage holder so that no further obligation would be due. Instead, they commit almost 80 percent of the payments for the first year of their plan to pay off the mortgage on their investment property. The entire amount remaining due on the mortgage was in default when this case was filed. After the plan salvages the investment property from foreclosure and pays off the mortgage, the debtors next turn to the satisfaction of their tax obligation. The tax obligation was to be paid in full after the 34th payment. During the first 34 months of the plan, $3,825 would be paid on the investment property, $9,028 would be paid to the Service, and nothing would be paid to unsecured creditors.

In an effort to remedy that obvious inequity, the plan provides for payments over 50 months, rather than just 36 months. Beginning with the 35th payment, the entire $376 net payment ($400 less the 6 percent administrative expense) would be distributed to unsecured creditors, resulting in a total payment on their claims in the amount of $5,640. Because those payments do not even begin for almost three years, the present value of the proposed payments is substantially less. Absent the mortgage payment, the unsecured creditors could be paid $3,825 over the first 36 months.

The debtors have enjoyed the protection of the automatic stay since June 14, 1989, and yet they have chosen not to commit payments accrued in the prior case to the benefit of their creditors and, in fact, did not disclose their existence as an asset of the debtors. The payments over the first year of the current plan would accrue to the benefit of the debtors exclusively. The debtors have failed to demonstrate any desire to repay their creditors. Instead, it is clear that the goal of this Chapter 13 is to rescue investment property from foreclosure and protect it from the Service until

the mortgage and the Service can be paid off. What will motivate these debtors to continue payments after those goals have been met? Absolutely nothing. And then the debtors can default and allow their case to be dismissed, resulting in the unsecured creditors having nothing whatsoever but some 34 months of delay caused by this plan on top of the almost 11 months of delay caused by the aborted first case.

The debtors' goals, as demonstrated by these facts, are not consistent with the purpose of Chapter 13 or of the Bankruptcy Code generally. The plan has not, therefore, been filed in good faith as required by Section 1325 of the Code. *See In re Kitchens*, 702 F.2d 885 (11th Cir.1983).

### Extended Plan

 Implicit in the terms of the plan is a request for the court to approve payments over a period longer than three years, pursuant to Section 1322(c). Under the facts of this case, it is clear that the debtors require the additional time to provide any payment at all to unsecured creditors, but the plan is structured in such a way as to provide no incentive to the debtors to continue the plan after the first 34 payments so the unsecured creditors will in fact realize their payments. For the reasons stated above, this payment scheme is inconsistent with the good faith requirement of the Code and falls far short of constituting cause for approving and extending the plan to 50 months. The purpose of that provision is to allow and encourage longer plans only where necessary to pay substantial dividends to creditors. *In re Price*, 20 B.R. 253, 255 (Bankr.Ky. 1981). The case therefore presents no cause for payments longer than 36 months.

### Burden of Demonstrating Entitlement to Confirmation

 The debtor in a Chapter 13 case has the burden of demonstrating to the court that the requirements for confirmation set out in Section 1325 of the Bankruptcy Code have been met. *In re Girdaukas*, 92 B.R. 373, 376 (Bankr.E.D.Wis.1988);

**160**

*In re Haas*, 76 B.R. 114, 116 (Bankr.S.D. Ohio 1987). In making that determination, the court and the creditors are entitled to full and accurate disclosure of the debtors' financial status. Based on the inconsistent and contradictory facts recited by the debtors, through their attorney, the debtors themselves have destroyed the court's confidence that it has a credible factual basis on which to make the findings necessary to confirm a plan.

### Conclusion

For all of the foregoing reasons, the court concludes that this Chapter 13 plan does not comply with the provisions of the Bankruptcy Code and cannot be confirmed; that the plan has not been proposed in good faith; and that the stay of creditors since June of 1989 for the purposes demonstrated here constitutes unreasonable delay that has been prejudicial to creditors. The court will therefore enter an order consistent with this memorandum opinion denying confirmation and dismissing this case.

DONE and ORDERED.