**In re Allen Warren SCOTT, Debtor.**

**Bankruptcy No. 91–34119.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 23, 1992.

Karen W. Dietrich, Richmond, Va., for debtor.

Archie C. Berkeley, Jr., Richmond, Va., for Call Federal Credit Union.

Tyler P. Brown, Hunton & Williams, Richmond, Va., for Philip Morris Deferred Profit–Sharing Plan.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This cause comes before the Court on the February 18, 1992, objection by Call Federal Credit Union ("Call") to confirmation of the debtor's Chapter 13 Plan. A hearing on the objection was held March 18, 1992, at which evidence was presented and arguments of counsel were heard. At the conclusion of the hearing this Court ordered briefs to be submitted by the parties. Philip Morris Deferred Profit Sharing Plan was authorized to file a brief *amicus curiae*. Oral argument was heard on May 12, 1992. After considering the evidence, arguments of counsel, the briefs submitted and the arguments in support of the briefs, this Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Allen Warren Scott ("debtor") filed a Chapter 13 petition in bankruptcy on October 2, 1991.

The first two Chapter 13 Plans filed by the debtor were denied confirmation by this Court. The debtor's third plan, entitled "Second Modified Chapter 13 Plan," dated February 4, 1992, (the "Plan") provides for funding of $28,302.44 over 57 months and payment of a dividend of approximately 17% to unsecured creditors, and further provides that funding of the Plan is to be made through twice monthly payments of $212.50. At issue is the debtor's intention to exclude from his monthly disposable income the sum of $790.36 and to make a direct payment in this amount to the Philip Morris Deferred Profit Sharing Plan (the "ERISA Pension Plan"), in order to pay back money debtor withdrew from his ERISA Pension Plan account.

Philip Morris U.S.A. employs the debtor as a salaried employee in Richmond, Virginia. The debtor participates in the ERISA Pension Plan which is sponsored by Philip Morris U.S.A. and is a qualified trust under § 401(a) of the Internal Revenue Code of 1986 and an employee benefit plan under the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(3). Both the debtor and Philip Morris have contributed to the debtor's ERISA Pension Plan account.

The ERISA Pension Plan allows participants to borrow from their ERISA Pension Plan accounts under certain circumstances. Those circumstances are set out in Article IX of the ERISA Pension Plan, which provides, in pertinent part:

1. A participant may ... make application for not more than two (2) loans from his ... Account(s) in an aggregate amount not greater than the lesser of (i) fifty percent (50%) of the Current Value of his ... account(s), or (ii) $50,000, reduced by the amount, if any, by which the highest outstanding balance of all loans made to the Participant pursuant to the provisions of this Article IX during the twelve (12) month period immediately preceding

the date on which the loan is made, exceeds the outstanding balance on the date the loan is made of all loans made to the Participant pursuant to this Article. A Participant may not have more than two (2) loans outstanding at any time.

2. The application for a loan shall specify the period of repayment, which period shall not be less than two (2) years nor more than five (5) years, provided that a Participant may apply for a period of repayment of not more than twenty-five (25) years if the proceeds of the loan are to be used to acquire any dwelling unit which is to be used within a reasonable period of time as the principal residence of the Participant.

3. Each loan shall be amortized in level payments over the term of the loan.

On June 11, 1990, the debtor withdrew $37,200 from his ERISA Pension Plan account which was evidenced by a promissory note providing that the withdrawn amount was to be paid back into debtor's account in 60 equal monthly installments of $790.36. The note further provides that interest would accrue on the balance of the loan at 10% per annum and that the loan would be repaid through a wage assignment on the debtor's compensation received as an employee of Philip Morris. The ERISA Pension Plan has filed no documents evidencing a security interest in collateral to secure repayment of the funds withdrawn from the debtor's account.

Under the terms of the promissory note, a default by the debtor would result in the debtor being deemed to have applied for a hardship withdrawal from his ERISA Pension Plan account. If a hardship withdrawal was deemed to have taken place, the $37,200 withdrawal, less any amounts paid back into debtor's account, would become a taxable distribution.

It further appeared from the March 18, 1992, hearing that the failure by the debtor to repay the withdrawn amount would result in no harm to the other participants in the ERISA Pension Plan and would not result in the loss of the debtor's job. The adverse effects of such a failure by the debtor would be felt only by the debtor

himself. The debtor would incur tax consequences resulting from the distribution made pursuant to the terms of the note, which also provides that he could never obtain another loan from his ERISA Pension Plan account. Further, the debtor's vested retirement account balance would be reduced by the amount the debtor failed to repay.

As of January 31, 1992, the outstanding balance on the debtor's withdrawal from his ERISA Pension Plan account was $28,-466.14 and the balance of the debtor's ERISA Pension Plan account, not including the withdrawn amounts, was $170,872.77. The debtor's account balance is currently considered by the administrators of the ERISA Pension Plan to be $199,338.91. The debtor's account includes a promissory note in the face amount of $37,200, currently valued by the administrators of the ERISA Pension Plan at $28,466.14 (the value still owed on the note) and the $170,-872.77 invested in stocks or funds at the direction of the debtor. In the event that the debtor failed to make the payments on the note at this time it would be considered a default, and in the event of a default, the debtor would be deemed to have applied for a hardship withdrawal from his account, and the resulting withdrawal would leave the debtor's account balance at $170,872.77. A default by the debtor would therefore not harm any other participants in the ERISA Pension fund as default would cause only a reduction in the debtor's own account balance.

Since the filing of his Second Modified Chapter 13 Plan, the debtor has continued to make the $790.36 monthly payments to the ERISA Pension Plan and has also made all payments required under the terms of his Chapter 13 Plan.

The issue before this Court is whether the debtor may continue to pay $790.36 per month in repayment of the loan obtained by the debtor from his ERISA Pension Plan account and at the same time exclude said sum from his projected disposable income.

## CONCLUSIONS OF LAW

In the Fourth Circuit the funds in the debtor's ERISA Pension Plan account

are not property of the debtor's estate under § 541(c)(2). *In re Moore*, 907 F.2d 1476 (4th Cir.1990). The funds in the debtor's ERISA Pension Plan account are therefore unavailable to the debtor's creditors. *Id.* Because the debtor's ERISA pension plan account is not part of the bankruptcy estate, the ERISA pension plan cannot have a lien on property of the estate securing debtor's loan.

The debtor asserts that the claim by the ERISA Pension Plan is a secured claim so that the debtor may repay 100% of the amount of the claim, while at the same time paying only 17% of the claim amounts to the holders of general unsecured claims. The debtor asserts that 11 U.S.C. § 506 makes the ERISA Pension Plan claim a secured claim by virtue of the assertion that the claim is subject to a setoff against the funds remaining in the debtor's ERISA Pension Plan account under 11 U.S.C. § 553.

11 U.S.C. § 506(b) provides, in pertinent part:

"An allowed claim of a creditor ... that is subject to setoff under § 553 of this title is a secured claim ... to the extent of the amount subject to setoff."

▮▮ 11 U.S.C. § 553(a) provides that the filing of a bankruptcy petition does not:

"affect the right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case."

§ 553 creates no substantive right to setoff, but preserves the common law right of setoff. *See In re Blanton*, 105 B.R. 321, 333–334 (Bankr.E.D.Va.1989). For the right of setoff to exist under § 553, there must exist debts owing by the debtor to a creditor and by the same creditor to the debtor, and the two debts must both be prepetition debts. *Id.; see also In re Express Freight Lines, Inc.*, 130 B.R. 288 (Bankr.E.D.Wis.1991).

▮▮ Section 101(12) of the Bankruptcy Code defines a "debt" as "liability on a claim." Section 101(5) defines a "claim" as "right to payment." *New York City Employees' Retirement System v. Villarie, (In re Villarie)*, 648 F.2d 810 (2nd Cir. 1981), provides guidance as to what constitutes a "debt" under the Bankruptcy Code. In *Villarie*, the Court of Appeals for the Second Circuit considered the question of whether an advance from an employee retirement system was a debt under the Bankruptcy Code. Members of the New York City Employees' Retirement System (the "System") contributed to their personal annuity savings fund by authorizing a deduction from the member's weekly paycheck. Members of the System could obtain a loan from the System which could not exceed 50% of the members previous contribution to the fund. The New York City Administrative Code required members to pay the loans back, even though the loans were, in essence, advances against the members own retirement benefits. If a member failed to pay back his loan, or if the member resigned from employment with New York City, the unpaid amount was deducted from the benefits the member was to receive from the System. In finding that this obligation to repay was not a debt, the Court of Appeals noted two situations under the old Bankruptcy Act that did not give rise to a debtor-creditor relationship. The first situation was an annuitant's withdrawal from the savings account of his annuity fund, *In re Vanhook*, 12 C.B.C. 68 (S.D.N.Y.1977), and the second was an insured's advance from the reserve fund of his insurance policy. *Orleans Parish v. New York Life Ins. Co.*, 216 U.S. 517, 30 S.Ct. 385, 54 L.Ed. 597 (1910). The *Villarie* court noted:

The Act's definition of provable debt did not encompass such situations, because in both instances the acquirer had merely borrowed back his own money; he was not liable to the lender for repayment. The lender's only remedy was to deduct the unpaid portion of the amount advanced from any benefits the borrower was to receive.

*Villarie*, supra, 648 F.2d at 812.

The *Villarie* court further noted that, in commenting upon the 1978 Act, which con-

tains the same definitions of claim and debt as the current Code, the Committee on the Judiciary summarized the Code's treatment of advances on life insurance policies:

> "the loan is not a claim (it is not a right to repayment) that the (insurance) company can assert against the estate; nor is the debtor's obligation a debt (a liability on a claim) that will be discharged under proposed 11 U.S.C. §§ 523 or 524.".

*Villarie, supra,* 648 F.2d at 812, *quoting from* The Notes of the Committee on the Judiciary, Sen–Rep. No. 95–989, *reprinted in* 11 U.S.C.A. § 101 at 36 (1979).

A similar issue was considered by the court in *In re Jones,* 138 B.R. 536 (Bankr. S.D. Ohio 1991). The court in *Jones* considered a Chapter 13 debtor's plan which provided for a $55 per month payment to the debtor's Federal Employee's Retirement System account in order to satisfy a $4,000 loan taken by the debtors from the account. The $55 per month payment was to be made through a wage assignment on the debtor's wages. Distributions from the debtor's retirement account were considered loans, and if not repaid became subject to taxation and early withdrawal penalties. The debtor's plan further provided only a 70% dividend to unsecured creditors. *Id.* at 537.

The debtors in *Jones* asked the court to classify the loan from the retirement account as a debt. The *Jones* court concluded that "[s]uch an order would, in effect, authorize the debtors to fully repay themselves as creditors, while paying the other creditors less than 100% of the debts owed them." *Id.*

The *Jones* court cited the *Villarie* case with approval and noted that, under the facts in *Jones:*

> As in *Villarie,* any amount not repaid to the TSP (the retirement plan) are merely offset from the debtor's future benefits. *See* 5 U.S.C. § 8401 *et seq.* Thus, the TSP administrator has no right to repayment, and the loan does not constitute a "claim" under 11 U.S.C. § 101(4) nor a

"debt" under 11 U.S.C. § 101(4) nor a "debt" under 11 U.S.C. § 101(11); ...

*Jones,* 138 B.R. at 538.

This Court finds the reasoning of the *Villarie* and *Jones* courts persuasive. The withdrawal in the case at bar created no right to repayment that the ERISA plan can assert against the debtor. The debtor can terminate the wage assignment on his salary at any time and the ERISA Pension Plan would have no recourse against him. The ERISA Pension Plan could not sue the debtor for the unpaid loan because its remedy is to deduct the unpaid portion of the amount advanced from any benefits the debtor was to receive in the future. The obligation on the note is not a debt in that the debtor merely withdrew money from his own account and substituted a note for the money taken.

The case at hand is not a case where the debtor has borrowed from the entire retirement fund, as was the case in *In re Miranda Soto,* 667 F.2d 235 (1st Cir.1981). In *Miranda Soto,* the debtor borrowed money from an association authorized to lend money to government employees. Membership in this association was compulsory for government employees. Further, there was no limit on the amount which the employees could borrow, leading the Court of Appeals to hold that the monies loaned were "borrowed not only from [the debtor] himself, but from all other members of the association." *Id.* at 238. The terms under which the loan was taken also led the *Miranda Soto* court to conclude that a lender-borrower transaction had taken place, rather than merely an advance against monies previously deposited by the debtor. Because of the terms of the withdrawal, and the fact that no limit existed as to the amounts each depositor could withdraw from the association, the court concluded that the obligation was a debt for the purposes of the Bankruptcy Code. *Id.*

*Miranda Soto* is distinguishable from the case at bar. In the case at bar, the debtor was limited as to the amount of his withdrawal from his ERISA Pension Plan account, so that no other participants in the ERISA Pension Plan would be harmed in

the event of a default by the debtor. As such, the debtor has borrowed only from himself and not from the other participants in the ERISA Pension Plan. The association in *Miranda Soto* could assert a right to payment against the debtor for the amounts the debtor had withdrawn. Such is not the case here, because the ERISA Pension Plan may only deduct the amounts withdrawn by the debtor from his ERISA Pension Plan account balance. The ERISA Pension Plan may not sue the debtor for his failure to repay the withdrawn amounts.

Because no "debt" exists between the debtor and the ERISA Pension Plan, this Court concludes that setoff is inapplicable to the case at bar. As a setoff is inapplicable, § 506 cannot be used by the debtor to make the claim of the ERISA Pension Plan a secured claim.

The question then becomes whether the ERISA Pension Plan has other rights in collateral that would make its claim secured.

The debtor asserts that the voluntary authorization given to the ERISA plan to deduct the payment from his paycheck is sufficient to secure the loan. This position is not supportable under the Bankruptcy Code and case law. "The question of whether a wage assignment gives rise to a continuing lien is well settled. The accepted rule is that the assignment of future wages as security for a present debt does not constitute a lien within the meaning of the Bankruptcy Code". *In re Miranda Soto*, 667 F.2d at 237, (citing cases). Notwithstanding the above, 11 U.S.C. § 552(a) would terminate any lien on the debtor's future wages upon the commencement of the debtor's bankruptcy case.

Therefore, this Court concludes that no basis exists under which the ERISA Pension Plan or the debtor could successfully argue that its claim is secured.

The Court must now consider whether the debtor's Chapter 13 Plan can be confirmed when the Plan provides for a $790.36 payment directly to the debtor's pension plan account, while paying his unsecured creditors only 17% of the value of their claims.

11 U.S.C. § 1325(a) provides that "[e]xcept as provided in subsection (b), the court shall confirm a plan if—" and then sets forth 6 statutory requirements which a plan must satisfy in order to warrant confirmation by the court. However, because of the exception in the introductory phrase of § 1325(a) and because Call objected, this Court first considers § 1325(b) without deciding whether the Plan is confirmable under § 1325(a).

11 U.S.C. § 1325(b) provides, in relevant part:

(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan:

(A) The value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) The plan provides that all of the debtor's projected disposable income to be received in the three-year period, beginning on the date that the first payment is due under the plan, will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended:

(A) For the maintenance or support of the debtor or a dependent of the debtor

. . .

Because Call, an unsecured creditor of the debtor, objected to confirmation of the debtor's plan, this Court must determine whether the debtor's proposed plan satisfies the requirements of § 1325(b). The Court may not approve the debtor's plan over Call's objection unless either § 1325(b)(1)(A) or (B) is satisfied.

In order to satisfy § 1325(b)(1)(A), a plan must provide for a 100% payment to unsecured creditors. Under the debtor's proposed plan, unsecured creditors are to receive a payout of approximately 17%. It is

clear that the debtor's proposed plan does not satisfy the requirements of § 1325(b)(1)(A).

Having not satisfied § 1325(b)(1)(A), the debtor's plan must satisfy § 1325(b)(1)(B) in order to be approved by this Court. Section 1325(b)(1)(B) has been interpreted by this Court to mean that, if the trustee or an unsecured creditor objects, "the Court may deny confirmation of a plan whenever the debtor fails to devote 100% of his disposable income to the funding of the plan, over and above that amount reasonably necessary for support or maintenance of the debtor or debtor's dependents." *In re Hedges*, 68 B.R. 18 (Bankr.E.D.Va.1986). Again, because Call objected, and because § 1325(b)(1)(A) has not been satisfied, this Court "may not approve" the debtor's plan if the plan does not conform to § 1325(b)(1)(B). The debtor's plan here proposes a $790.36 payment into his ERISA Pension Plan account, while at the same time paying only 17% to his unsecured creditors.

The court in *In re Lindsey*, 122 B.R. 157 (Bankr.M.D.Fla.1991) considered a Chapter 13 debtor's plan which proposed to make payments on a 40–acre parcel of non-income producing real property, while paying approximately 47% to the holders of unsecured claims. The court found that the plan purported to commit all of the debtor's disposable income to the plan, but further found that the payments on the parcel of investment property made through the plan rendered the plan unconfirmable. *Id.* at 158. The Court said, "a substantial portion of the first 12 payments [under the plan] are committed to improving the debtor's equity position and, with the 12th payment, to pay off the debtor's investment property." *Id.* The court further held:

Although investments may be financially prudent, they certainly are not necessary expenses for the support of the debtors or their dependents. *In re Festner*, 54 B.R. 532, 533 (Bankr.E.D.N.C.1985). Investments of this nature are therefore made with disposable income; disposable

income is not what is left after they are made.
*Lindsey*, 122 B.R. at 158.

In holding that the retention of a Chaparral boat by a debtor constituted the retention of a luxury good not reasonably necessary for the debtor's support or maintenance, this Court stated that a "fundamental purpose of the disposable income provision is to prevent large expenditures by debtors for non-essential items which ultimately reduce the sum available to pay holders of unsecured claims." *Hedges*, 68 B.R. at 20 (quoting 5 Collier on Bankruptcy ¶ 1325.08 (15th ed. 1985)). The debtor in *Hedges* proposed to pay in full, through his Chapter 13 Plan, the debt owed on his boat, while paying his other unsecured creditors 45% on their claims.

Similarly, in *Festner*, a case cited by this Court in its *Hedges* opinion, the Bankruptcy Court for the Eastern District of North Carolina found that a debtor's plan which provided for a 42% payout to unsecured creditors could not be confirmed when it also provided for payroll deductions to effect a $25 weekly payment into a voluntary retirement plan, a $22 weekly payment to purchase stock under an employee stock option plan, and a $85 monthly payment to repay a loan secured by shares of stock. The *Festner* court stated:

These expenditures are desirable from the debtor's standpoint, but they are certainly not necessary. Additional pension plans and stock purchases may be wise investments which enhance an individual's security, but the debtor is not entitled to acquire them at the expense of unpaid creditors.
*Festner*, 54 B.R. 532, at 533.

The *Festner* court further found that those investment payments constituted payments made with disposable income, without which payments the debtor could have paid approximately 82% to his unsecured creditors.

This Court finds the reasoning of the courts in the above cases to be applicable to the case at bar.

In the case at bar, the debtor proposes to pay his unsecured creditors a dividend of

17% while paying $790.36 per month for 60 months into his own retirement account, in order to pay back a withdrawal from that account made by the debtor himself. The debtor testified that, without the $790.36 payment per month, he would be able to pay his unsecured creditors a dividend of approximately 60%. The Court finds that the $790.36 payment is not reasonably necessary for the support of the debtor and the payment therefore constitutes disposable income. Payments on the withdrawal from the retirement plan under the Chapter 13 plan are clearly made with debtor's disposable income to the detriment and at the expense of unsecured creditors. While recognizing that this result may work some hardship on the debtor in the future, it must be noted that a "Chapter 13 debtor who is not able to pay its creditors in full is expected to demonstrate a degree of belt tightening." *Matter of Jones*, 119 B.R. 996, 1000 (Bankr.N.D.Ind.1990). As such, this Court concludes that the debtor's proposed plan does not provide that all of the debtor's projected disposable income will be applied to the payments under the plan. The debtor's proposed plan therefore violates § 1325(b).

■ Although the use of the words "the court may not" in § 1325(b) may appear to be precatory and give the Court some discretion, the Court believes that it was the intention of the Congress to make it mandatory. In any event the Court, in the exercise of its discretion, if any, would not approve this plan for the reasons stated herein.

■ Under the terms of the debtor's Chapter 13 Plan, the debtor proposes to make payments on the loan from his ERISA Pension Plan account through voluntary wage assignments. 11 U.S.C. § 1306 provides, in pertinent part:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a

case under Chapter 7, 11, or 12 of this title, whichever occurs first.

The plain language of the Statute therefore provides that future earnings of a debtor in a Chapter 13 case are property of the estate. *King v. Wood, (In the Matter of Wood)*, 116 B.R. 413 (D.N.J.1990); *Waugh v. Saldamarco, (In re Waugh)*, 82 B.R. 394 (Bankr.W.D.Pa.1988). By paying back the loan from his own ERISA Pension Plan account through a wage assignment, the debtor is removing funds from his estate and transferring them into an account where those funds will be unavailable to creditors under the ruling in *In re Moore, supra*. Under the ruling in *Moore* that ERISA Pension Plan funds are not property of the estate, the debtor, by paying back his loan from his ERISA Pension Plan account through wage assignments on his earnings, is effectively taking money out of the bankrupt estate, never to be returned. Even upon conversion or dismissal, the debtor's ERISA Pension Plan fund would be unavailable to creditors.

The Bankruptcy Court for the Southern District of Ohio, in *Jones*, stated further, "Allowing payment of a [less than 100%] dividend to creditors, while permitting the full repayment of the debtor's retirement funds, would allow the debtor to place income, which the debtor will have available to him upon retirement, out of the reach of creditors." *Jones*, 138 B.R. at 538. The debtor in the case at bar is therefore building up equity in a retirement account, which account will never be available to creditors, at the expense of his unsecured creditors, who would receive approximately a 60% payout if payments were not made to the debtor's ERISA account. *See In re Lindsey, supra; In re Hedges, supra.* This is a result this Court should not allow.

In conclusion, it is helpful again to note the situation faced by the *Jones* court. The debtors in *Jones* had borrowed "nearly 100%" of the funds in their retirement account, which led the court to note that their holding, *prohibiting the debtor from paying* back the sums withdrawn from their retirement account, resulted in the "Debtors' existing retirement benefits" being "virtu-

ally wiped out." *Jones,* 138 B.R. at 539. Nevertheless, the court noted that:

> This result is mandated for two reasons. First, to allow the debtors to withdraw and use their benefits in advance of retirement and then claim this as a protected fund would be unfair to their creditors. Second, such a holding would provide an inappropriate message to future debtors. The holding would suggest that debtors contemplating bankruptcy could take out loans against their retirement fund and then insulate those sums from the Chapter 13 Trustee. The result would be that sums expended from future earnings on the repayment of these loans would be beyond the creditors' reach.

*Id.*

This Court therefore concludes that the $790.36 per month payment by the debtor to his own ERISA Pension Plan account should not be allowed. This Court recognizes that the debtor will be deemed to have made a hardship withdrawal from his ERISA pension account when the payments to the account cease and that such withdrawal will cause the debtor to incur tax liability for the withdrawn amount, and he will be precluded from further borrowing against that account, but the Court finds that the debtor may not avoid such liability and hardship to the detriment of his creditors.

For the foregoing reasons, this Court finds that the objection of Call Federal Credit Union to confirmation of the debtor's Chapter 13 Plan should be sustained.