**In re Darcy Ione ESTES, Debtor.**

**No. 00–20276.**

United States Bankruptcy Court,
D. Idaho.

Sept. 20, 2000.

Kenneth L. Anderson, Lewiston, ID, for Debtor.

C. Barry Zimmerman, Coeur d'Alene, ID, Chapter 13 Trustee.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

### BACKGROUND

The Trustee objects to confirmation of the Debtor's proposed Chapter 13 plan. After a hearing was held on August 18, 2000, the Court took this matter under advisement. The following constitutes the Court's findings of fact and conclusions of law. Rule 7052.

**1.** This schedule states that Putnam Investments is the "creditor" on this debt with a $15,000 claim "secured" by the remaining 401K loan balance. Nothing of record establishes the interests of Putnam as a creditor rather than custodian or the existence of any lien or security interest in the 401K. The briefing of the parties would indicate that the Debtor simply withdrew funds from her 401K as a loan, and she seeks to repay the same in order to avoid tax and penalty.

**2.** The exemption is claimed under "Idaho Code § 11–604(1)(e)" rather than the proper

### FACTS

Darcy Estes ("Debtor") filed her chapter 13 petition and schedules on March 15, 2000. On Schedule D (secured debts), she listed $15,000 in loans she had taken from her 401K retirement fund.[1] Schedule B reflects her 401K is worth $40,000. She claims the 401K fully exempt on Schedule C.[2]

She includes within her Schedule I a monthly payroll deduction of $302.00 to service this 401K loan. Schedule I and J indicate a disposable income of $315.00 per month. The Debtor's proposed plan is consistent, and provides for 36 monthly payments of $315.00 to the Trustee, and indicates the $302.00 per month will be paid directly or "outside the plan" to repay the loan from her 401K plan.[3] The Debtor's budget does not propose any continuing contributions to her 401K plan.

The Trustee objects to confirmation of the Debtor's proposed plan, asserting that not all of her disposable income is devoted to the plan, and thus the requirements of § 1325(b)(1)(B) are not fulfilled.[4] The Debtor in turn asks the Court to find these loan payments of $302.00 per month are reasonably necessary for her maintenance or support, and thus are properly excluded from the calculation of her disposable income.

### DISCUSSION

When unsecured creditors are to receive less than full payment on their claims,

statute, § 11–604A. However, no objection was timely raised to the Debtor's claim of exemption. Rule 4003(b).

**3.** Additional payments "outside the plan" will service mortgage debt, and total $893.00 monthly.

**4.** The Trustee has indicated unsecured creditors will receive approximately 20% on their claims under the Debtor's proposed plan, presumably after Trustee's fee is deducted. Thus § 1325(b)(1)(A) is not relevant.

§ 1325(b)(1)(B) requires that a debtor devote all of her "disposable income" to the chapter 13 plan for three years. "Disposable income" is defined as "Income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." § 1325(b)(2)(A). If all of Debtor's disposable income is not committed, the Chapter 13 plan cannot be confirmed over the Trustee's objection. Therefore, in determining whether Debtor's proposed plan should be confirmed, this Court must decide whether repayments to her 401K account should be included in the calculation of her disposable income.

In *In re Cavanaugh*, 175 B.R. 369, 94 I.B.C.R. 219 (Bankr.D.Idaho 1994), this Court distinguished between "mandatory" and "voluntary" contributions to pension plans through payroll deductions. It held that, if such contributions are voluntary, they are not necessary for the maintenance or support of the debtor, and thus must be included in disposable income. On the other hand, if the contributions are mandatory, they are excluded from disposable income. 175 B.R. at 373, 94 I.B.C.R. at 221. *Cavanaugh* remains the rule in this District. *In re Williams*, 98.3 I.B.C.R. 57 (Bankr.D.Idaho 1998).

While neither *Cavanaugh* or *Williams* expressly considered repayment of a loan taken from a 401K fund,[5] such a repayment is not "mandatory" in the sense there discussed. *See, e.g., Cavanaugh*, 175 B.R. at 373, 94 I.B.C.R. at 221, n. 4, citing as illustrative of a "mandatory" contribution, *In re Colon Vazquez*, 111 B.R. 19, 20 (Bankr.D.Puerto Rico 1990) because Puer-

to Rican law required deduction from a teacher's payroll for establishment of a savings account. The parties here appear to agree that, while there is an economic consequence suffered by a debtor who doesn't restore her retirement fund, the repayment of the loan is voluntary, not required by law or contract.

■ The Debtor asks the Court to ignore or overrule these cases. *In re De-Boer*, 99.3 I.B.C.R. 101 (Bankr.D.Idaho 1999), articulated the burden assumed by a litigant who attempts to convince this Court that its prior decisions should be disregarded.

> In order to promote consistency and predictability, and faith in the rule of law, this Court should depart from its prior decisions, whether rendered by the same or another bankruptcy judge, only upon compelling circumstances. These circumstances might include statutory amendments, changes in or development of relevant case law (particularly by higher courts), or similar factors which undermine the basis for or persuasiveness of the earlier ruling. It is incumbent upon those who seek rulings at odds, with this Court's prior decisions to appreciate these reasonable and appropriate constraints on such relief, and to support their request with clear and cogent analysis. Merely arguing that the proponent disagrees with the precedent is insufficient. True, the law is dynamic not static, but prior pronouncements are not, and should not be, lightly discarded.

99.3 I.B.C.R. at 103 (footnote omitted).[6]

In arguing that this Court should disregard *Cavanaugh*,[7] the Debtor relies pri-

---

5.  However, in addressing the cases concerning "voluntary" 401K contributions, *Cavanaugh* cited *In re Scott*, 142 B.R. 126 (Bankr. E.D.Va.1992). *Scott* concerned voluntary repayment of funds borrowed from an ERISA plan, thus providing an indication how Judge Hagan would have approached the instant issue.

6.  Such compelling circumstances were found, for example, in *In re Stellman*, 237 B.R. 759

(Bankr.D.Idaho) where prior decisional law was not followed due to subsequent changes in applicable state statutes.

7.  Actually, the Debtor did not acknowledge or discuss *Cavanaugh*, which is controlling authority in this District, until the Court specifically required that she do so.

marily on *In re Kelly*, 841 F.2d 908 (9th Cir.1988) and *In re Mills*, 246 B.R. 395 (Bankr.S.D.Cal.2000). She claims that these cases undermine the analysis in *Cavanaugh*.[8]

*Kelly* was issued several years before *Cavanaugh*, and a decade before *Williams*. That neither Idaho decision would mention it is not surprising. *Kelly* involved dismissal of chapter 7 cases under § 707(b), and essentially adopted an ability to pay test for such motions. It did not address 401K issues under § 1325(b). The Court has been unable to identify anything in *Kelly* dealing with the question of whether pension plan loan repayments in a chapter 13 plan are reasonably necessary for the debtor's support. And the Debtor doesn't explain what aspect of *Kelly* is relevant to the issue, much less "controls" it.

*Mills*, at least, is more to the point. It discusses both voluntary 401K payments and repayments of 401K loans within the context of § 1325(b). 246 B.R. at 401–03. *Mills* acknowledges a split of authority on the plan contribution issue and, after analyzing that authority, "declines to adopt [a per se rule] and instead chooses to follow [a] case by case analysis." 246 B.R. at 401.[9] With due respect to that court, simply because it prefers one line of authority over another does not compel this Court to follow suit.

Many other reported decisions address § 1325(b) and, in particular, voluntary payments to 401K plans and repayment of 401K loans. They receive no attention from or discussion by the Debtor.[10] Since *Cavanaugh* was rendered, the overwhelming majority of decisions favor the conclusion that when repaying loans taken from pension funds is not mandatory or a condition of continued employment, those payments are not reasonably necessary for the debtor's support and must be included when calculating disposable income. *See, e.g., Anes v. Dehart (In re Anes)*, 195 F.3d 177, 180–81 (3d Cir.1999); *In re Harshbarger*, 66 F.3d 775, 777 (6th Cir.1995); *In re Delnero*, 191 B.R. 539, 543 (Bankr. N.D.N.Y.1996); *In re Goewey*, 185 B.R. 444, 446 (Bankr.N.D.N.Y.1995).[11] "[T]he fact that a contribution is made in the form of a loan repayment to a 401K plan does

---

**8.** Indeed, she states that *Cavanaugh* is "inconsistent with controlling authority from the 9th Circuit." Debtor's Supplemental Brief, at 2. That assertion is not at all substantiated.

The Debtor also asserts that *Mills* "following *Kelly* . . . rejected any per se rule" regarding voluntary contributions. Debtor's Brief in Support of Confirmation, at 2. This is a mischaracterization. *Mills* cites *Kelly* only in regard to the ability to pay requirement, 246 B.R. at 400, and substantial abuse, 246 B.R. at 403. *Kelly* is not discussed in part A(1) and (2) of the decision regarding the 401K payments and loan repayments. 246 B.R. at 401–02.

**9.** The court in *Mills* engaged in a similar analysis of the divided case law regarding 401K loan repayments, and again chose a case by case approach over the more bright-line rule that others courts, including two circuit courts, had embraced. 246 B.R. at 402.

**10.** Litigants are bound to address contrary authority. *See* Fed.R.Bankr.P. 9011(b)(2). That duty is heightened when some of that opposing law is from this jurisdiction, and the litigant urges its reversal or modification. *DeBoer, supra.*

**11.** In fact, only one decision has been located in which pension loan repayments were allowed in a chapter 13 plan in which unsecured creditors were receiving less than full payment on their claims. *In re Buchferer*, 216 B.R. 332, 337 (Bankr.E.D.N.Y.1997). The court in *Buchferer* determined that the pension loan was a secured debt; therefore unsecured creditors would not be prejudiced, as different classes of creditors may be treated differently under the plan. *Id.* Several courts have specifically declined to follow this decision. *See, In re Padro*, 252 B.R. 809, 811–12 (Bankr.M.D.Fla.2000); *In re Johnson*, 241 B.R. 394, 400 (Bankr.E.D.Tex.1999); *In re Esquivel*, 239 B.R. 146, 152 (Bankr.E.D.Mich. 1999); *In re Nation*, 236 B.R. 150 (Bankr. S.D.N.Y.1999); *In re Gilliam*, 227 B.R. 849, 851 (Bankr.S.D.Ind.1998); *In re Devine*, 1998 WL 386380 (Bankr.E.D.Pa.1998) at *8. *See also, New York City Employees' Retirement System v. Villarie (In re Villarie)*, 648 F.2d 810, 812 (2d Cir.1981).

not change the result. As long as the payment is voluntary, it is not considered necessary for support or maintenance." *In re Devine,* 1998 WL 386380 (Bankr. E.D.Pa.1998) at *8.

Courts have recognized that repaying a pension loan is essentially repaying one-self. *Devine,* 1998 WL 386380 at *7; *Delnero,* 191 B.R. at 544; *In re Scott,* 142 B.R. 126, 131 (Bankr.E.D.Va.1992). Allowing these pension loan repayments when unsecured creditors are receiving less than full payments on their claims would encourage debtors contemplating bankruptcy to take out pension loans knowing that their future income would be shielded from their unsecured creditors. *Delnero,* 191 B.R. at 541; *Scott,* 142 B.R. at 134; *In re Jones,* 138 B.R. 536, 539 (Bankr.S.D.Ohio 1991).

A supplemental argument is advanced by the Debtor. It starts with the premise that public policy supports individuals saving for retirement, and that this policy extends even to the exemption of retirement funds. *See* Idaho Code § 11–604A. Thus, Debtor submits, her repayment of the 401K loans are consistent with this policy, and her "modest contributions" should be unobjectionable.[12]

■ But simply because certain property is exempt on the date of filing bankruptcy does not authorize enhancement or additions thereto from post-petition income which § 1325(b) requires to be devoted to repayment of creditors. Other than in her generalized reliance on "policy," the Debtor offers no authority to support a contrary conclusion.

It can also be observed that the diversion of income proposed here is something

more than a "modest contribution." The loan repayment of $302 per month is nearly as much as the proposed $315 plan payment. Over three years, Debtor pays herself $10,872, and pays her creditors some $10,206.[13]

The "pro-retirement policy" approach here urged would have ramifications beyond the loan repayment situation. If the policy is as compelling as Debtor contends, there would be no reason to reject any voluntary enhancement of a 401K post-petition (at least absent Court imposition of a standard as to what level of contribution would be "immodest.") The Court declines to venture where Debtor suggests.

The Debtor simply has not shown the sort of "compelling circumstances" required under *DeBoer* which would convince this Court to depart from its holdings in *Cavanaugh* and *Williams,* or break with the overwhelming majority of cases from other jurisdictions.

In applying the rule in *Cavanaugh,* then, Debtor must show that the repayments are mandatory in order to exclude them from her disposable income. 175 B.R. at 372, 94 I.B.C.R. at 221. She has put forth nothing which would indicate these loan payments are in any way "mandatory." Even if *Mills'* case by case approach were to be adopted, as the Debtor advocates, she has not shown why the Court should conclude that the loan repayments are reasonably necessary for her support within the contemplation of § 1325(b).[14]

■ Debtor argues that she will be subjected to income tax and tax penalties if she does not repay these loans. But such penalties are not sufficient to make these

---

**12.** Debtor's Second Supplemental Brief, at 2.

**13.** Plan payments of $315 over 36 months equals $11,340. The Trustee's fees and expenses would be approximately 10%, thus yielding $10,206.

**14.** Interestingly, *Mills* ended up with the same ultimate result: "This debtor has not argued the existence of any circumstance

which should cause this Court to conclude that his repayment of the loan is necessary for his support or maintenance.... On these facts, the court concludes that under § 1325(b)(2)(A), the proposed repayment to the 401(k) plan is not reasonably necessary." 246 B.R. at 402–03 (citation and emphasis omitted).

payments "mandatory" and therefore excluded from the calculation of disposable income. *Padro,* 252 B.R. at 811–12; *Johnson,* 241 B.R. at 401; *In re Jaiyesimi,* 236 B.R. 145, 148 (Bankr.S.D.N.Y.1999); *In re Nation,* 236 B.R. 150, 155 (Bankr.S.D.N.Y. 1999); *Delnero,* 191 B.R. at 544; *Scott,* 142 B.R. at 135. Additionally, in order to overcome this impact, the Trustee has offered Debtor a "credit" in the amount of the projected tax and penalty, and only seeks her contribution of the "net" to the plan for distribution to unsecured creditors. Debtor has not contested the accuracy of the Trustee's calculations or projections. This approach of the Trustee appears to the Court to acknowledge the financial situation and is an appropriate means to establish the Debtor's disposable income.

## CONCLUSION

The Debtor has not demonstrated any competent much less compelling reason for this Court to disregard or overrule its prior decisions, or to part with the weight of authority. The rule in *Cavanaugh* and *Williams* will be followed. Because Debtor's repayment of loans from her 401K account is not mandatory, such repayments are not reasonably necessary for her support and must be included within the calculation of disposable income. The Trustee's objection will be sustained and confirmation of the Debtor's proposed Chapter 13 plan will be denied. A separate order will be entered accordingly.