

Opinions of the United
States Court of Appeals
for the Third Circuit

10-27-1999

# In Re: Anes

Precedential or Non-Precedential:

Docket 99-7043

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation
"In Re: Anes" (1999). *1999 Decisions*. Paper 292.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/292

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 27, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-7043

IN RE: LUISA V. ANES;
IN RE: ROBERT TIERNEY and BEVERLY TIERNEY,
        Debtors

LUISA V. ANES;
ROBERT TIERNEY and BEVERLY TIERNEY,
        Appellants

v.

CHARLES J. DEHART III, TRUSTEE,
        Appellee

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 98-cv-00314
(Honorable James M. Munley)

Argued July 27, 1999

Before: SCIRICA and STAPLETON, Circuit Judges,
and GREEN, District Judge*

(Filed October 27, 1999)

_____

* The Honorable Clifford Scott Green, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

JOHN DiBERNARDINO, ESQUIRE
 (ARGUED)
417 Iron Street
P.O. Box 599
Lehighton, Pennsylvania 18235

 Attorney for Appellants

AGATHA R. McHALE, ESQUIRE
 (ARGUED)
P.O. Box 410
Hummelstown, Pennsylvania 17036

 Attorney for Appellee

HENRY J. SOMMER, ESQUIRE
Miller, Frank & Miller
640 PSFS Building
21 South 12th Street
Philadelphia, Pennsylvania 19107

 Attorney for Amicus Curiae-
 Appellant, National Association of
 Consumer Bankruptcy Attorneys

OPINION OF THE COURT

SCIRICA, Circuit Judge.

The issue on appeal is whether an individual debtor's bankruptcy plan that proposes to repay a loan drawn from a retirement system without first paying unsecured creditors in full conforms with the Bankruptcy Code and, in particular, whether it violates 11 U.S.C. S 1325(b)(1). Debtors, Luisa Anes and Robert and Beverly Tierney, appeal the District Court's judgment to uphold the dismissal of their respective voluntary Chapter 13 bankruptcy petitions. The appeals in these otherwise unrelated bankruptcy cases were consolidated on April 6, 1998. See In re Anes, 216 B.R. 514, 514 (Bankr. M.D. Pa. 1998) (noting joint disposition of In re Anes and In re Tierney).

I

Luisa Anes is a New York City employee who participates in a mandatory pension plan administered by the New York City Employees Retirement System. Contributions are deducted from her paycheck on a monthly basis. In September 1995, Anes obtained a loan from the Retirement System. The application characterized the loan as being made not from Anes' pension fund but from "other retirement system funds." Anes was permitted to borrow no more than 75% of the balance in her pension account. Payments on the loan, including interest, are deducted from her paycheck, in addition to her regular pension contribution. If she fails to pay off the loan, the balance will be deducted from her pension balance.

Robert Tierney is a New Jersey firefighter whose mandatory pension is administered by the New Jersey Police and Fireman's Retirement Fund. In May 1996, he borrowed money from the fund under terms that allow employees to borrow no more than 50% of the amount of their retirement account. Loan payments are withheld from Tierney's paycheck. If he fails to pay off the loan, the balance owed will be deducted from his retirement account.

Both Anes and the Tierneys (Robert and his wife Beverly) filed for Chapter 13 bankruptcy on August 23, 1996, proposing to make full loan repayments by way of paycheck deductions but no payments to their unsecured creditors. After Charles Dehart, the bankruptcy trustee, objected to the respective plans, the Bankruptcy Court rejected them, ruling that the Debtors had not borrowed money from their respective pension plans but rather had withdrawn funds from their retirement accounts. Because the debtors did not have a debt to the Retirement System, the court ruled they could not "repay" that debt under their bankruptcy plans. See In re Anes, 216 B.R. at 514–15. The District Court affirmed,[1] see In re Anes, No. 98-CV-0314, typescript op. at

_____

1. The District Court agreed with the Bankruptcy Court "that a loan taken against a retirement account is not a `debt.' " In re Anes, No. 98-CV-0314 at 3. It further concluded that because the payments were not directed at debts they constituted disposable income and had to be used to satisfy unsecured creditors under the Chapter 13 plans. See id.

3

2-4 (M.D. Pa. Nov. 23, 1998), and Debtors now appeal. We will affirm, but on a different theory.

II

The Bankruptcy Court had jurisdiction under 28 U.S.C. S 1334. Confirmation of a proposed bankruptcy plan is a core bankruptcy matter. See 28 U.S.C. S 157(b)(2)(L). The District Court, therefore, had jurisdiction to hear an appeal from the Bankruptcy Court's decision under 28 U.S.C. S 158(a); our jurisdiction is provided by 28 U.S.C. S 158(d). In core matters, the District Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo. See Meridian Bank v. Alten, 958 F.2d 1226,1229 (3d Cir. 1992). We exercise plenary review over the District Court's determination, exercising the same review exercised by the District Court over the Bankruptcy Court. See In re Continental Airlines, 125 F.3d 120, 128 (3d Cir. 1997).

III

The trustee contends that, whether or not the Debtors' obligation to repay their respective retirement systems constitutes a debt for bankruptcy-law purposes, the repayment is impermissible under 11 U.S.C. S 1325(b)(1), which provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan--
>
> (A) the value of the property to be distribute d under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

Because the trustee has objected to the Debtors' plans and the plans would not repay the unsecured creditors in full,

4

the plans can be confirmed only under S 1325(b)(1)(B), requiring all of the debtors' projected disposable income to be applied to unsecured debts for three years. Disposable income, for individuals not engaged in business such as Anes and the Tierney's, is that income "not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor . . . ." Id. S 1325(b)(2)(A). Section 1325(b)(1)(B) contains no exception for repayment of secured debts. Debtors, therefore, can make the proposed payments only if those payments are reasonably necessary for their maintenance or support.

The Court of Appeals for the Sixth Circuit has held that repayment of amounts withdrawn from retirement accounts is not reasonably necessary for a debtor's maintenance or support, requiring that payments be made, if at all, only after satisfaction of all unsecured debts. See Harshbarger v. Pees (In re Harshbarger), 66 F.3d 775, 777 (6th Cir. 1995); accord In re Gilliam, 227 B.R. 849, 851 (Bankr. S.D. Ind. 1998); In re Scott, 142 B.R. 126, 134 (Bankr. E.D. Va. 1992). We agree. If the Debtors do not make the proposed payments, the retirement systems will deduct the balance owed from their retirement accounts. The payments, even if classified as debt payments, therefore, will increase their retirement benefits rather than repay the retirement systems or ensure the viability of either pension system. In effect, the payments are contributions to the Debtors' retirement accounts. Voluntary contributions to retirement plans, however, are not reasonably necessary for a debtor's maintenance or support and must be made from disposable income. See In re Cornelius, 195 B.R. 831, 835 (Bankr. N.D.N.Y. 1995); In re Cavanaugh, 175 B.R. 369, 373 & n.3 (Bankr. D. Idaho 1994); In re Fountain, 142 B.R. 135, 137 (Bankr. E.D. Va.1992); In re Festner, 54 B.R. 532, 533 (Bankr. E.D.N.C.1985). As one bankruptcy court explained in refusing to confirm a plan that proposed to make mortgage payments on non-residential property rather than satisfy unsecured creditors, "[a]lthough investments may be financially prudent, they certainly are not necessary expenses for the support of the debtors or their dependents. Investments of this nature are therefore made with disposable income; disposable income is not what is left after they are made." In re Lindsey, 122 B.R. 157, 158

5

(Bankr. M.D. Fla.1991). Debtors' proposed payments, regardless of their financial prudence, must be understood as being made out of "disposable income" under the terms of their proposed plans.

Without disputing that the loan payments are not reasonably necessary to their maintenance or support, Debtors argue the payments are nevertheless permissible under S 1325(b)(1), contending primarily that disallowance of repayment of retirement plan loans will create counterproductive incentives for people anticipating bankruptcy. Debtors maintain that a person expecting to file for bankruptcy who needs to purchase an asset necessary for his or her maintenance or support (such as an automobile) will choose to finance the purchase with a loan secured by the asset (an automobile loan) rather than by borrowing against retirement funds, because payments on a loan secured by an asset necessary for a debtor's maintenance or support are permissible under S 1325(b)(1). Because the interest rate on a loan from a retirement plan may be lower than one secured by an asset such as an automobile, Debtors assert that the Bankruptcy Court's decision will increase total debt levels and reduce unsecured creditors' recovery. Debtors also contend that those with debts to their retirement systems will be encouraged to file for bankruptcy under Chapter 7 rather than Chapter 13, because Chapter 7 permits discharge of debts without regard to debtor's use of future income, see 11 U.S.C. S 726, freeing the debtor to build up his or her retirement account.

Where, as here, the language of a statute is unambiguous, we will enforce that language as long as "the statutory scheme is coherent and consistent." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997) (internal quotation marks omitted). Therefore, Debtors' objections to S 1325(b)(1)'s consequences, if valid, must be directed to Congress.

As we have noted, the proposed loan payments are properly understood to be payments made using disposable income. Because the proposed plans call for repayment of the respective retirement systems out of disposable income

6

without full satisfaction of the Debtors' unsecured debts, they were properly rejected under S 1325(b)(1)(B).2

## IV

Debtors contend their retirement systems have a right to deduct loan payments from their respective paychecks under the doctrine of recoupment. Maintaining that neither they nor the Bankruptcy Court can prevent the retirement systems from effectuating these deductions, Debtors assert that recoupment may be made in preference to other creditors' claims. Debtors, however, are mistaken as to the applicability of recoupment.

The law of recoupment is best understood in contrast to the related doctrine of setoff. See University Med. Ctr. v. Sullivan (In re University Med. Ctr.), 973 F.2d 1065, 1079 (3d Cir. 1992). "The right of setoff (also called `offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding `the absurdity of making A pay B when B owes A.' " Citizens Bank v. Strumpf, 516 U.S. 16, 18 (1995) (citation omitted). With exceptions not relevant here, Congress has specified that bankruptcy law does not affect a creditor's right of setoff, provided that both the creditor's claim against the debtor and the debtor's claim against the creditor arose before the debtor went into bankruptcy. See 11 U.S.C. S 553(a); 3 University Med. Ctr., 973 F.2d at 1079.

The common-law doctrine of recoupment "is not codified in the Bankruptcy Code, but has been established through decisional law." Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.), 60 F.3d 1031, 1035

_____

2. Having determined that the proposed payments are an inappropriate use of disposable income, we need not consider whether Debtors have secured debts to their retirement systems. See Harshbarger, 66 F.3d at 778; Gilliam, 227 B.R. at 851 n.2.

3. "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. S 553(a).

7

(3d Cir. 1995). Like a setoff, recoupment permits a creditor that owes a debt to the debtor to reduce the amount of its debt by the amount of a debt owed by the debtor to the creditor. See University Med. Ctr., 973 F.2d at 1079-80; Bustamante v. Johnson (In re McConnell), 934 F.2d 662, 667 (5th Cir. 1991). But the right of recoupment, unlike the right to setoff, exists only where the two debts arise out of the same transaction. See University Med. Ctr., 973 F.2d at 1079; Flagstaff Realty, 60 F.3d at 1035; Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1399 (9th Cir. 1996). A creditor with a right of recoupment generally can recoup the full amount owed, to the exclusion of other creditors. See Flagstaff Realty, 60 F.3d at 1035 ("A claim subject to recoupment avoids the usual bankruptcy channels and thus, in essence, is given priority over other creditors' claims."); United States Abatement Corp. v. Mobil Exploration and Producing U.S., Inc. (In re United States Abatement Corp.), 79 F.3d 393, 398 & n.13 (5th Cir. 1996). The right of recoupment is not subject to the S 553 requirement that both debts arise prior to the debtor's entry into bankruptcy. See Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984).

Assuming arguendo that Debtors' obligations to repay the loans in question constitute a debt for bankruptcy purposes, the loan payments nevertheless do not constitute recoupment. New York City, for example, would have a right to recoup Anes' loan obligation from her salary only if Anes' obligation to repay the loan and the city's obligation to pay her salary arose from the same transaction. In University Med. Ctr., we emphasized that the doctrine of recoupment must be narrowly construed in the bankruptcy context:

> For the purposes of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, . . . does not mean that the two arose from the `same transaction.' " Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations. Use of this stricter standard for delineating

> the bounds of a transaction in the context of
> recoupment is in accord with the principle that this
> doctrine, as a non-statutory, equitable exception to the
> automatic stay, should be narrowly construed.

973 F.2d at 1081 (quoting Lee, 739 F.2d at 875 and citing
Ashland Petroleum Co. v. Appel (In re B&L Oil Co.), 782 F.2d
155, 158 (10th Cir. 1986)) (omission in original). Anes' debt
arises from the loan she obtained from the Retirement
System, whereas the city's obligation to pay her salary
arises from her contract of employment and performance of
her job. These obligations cannot satisfy the University Med.
Ctr. standard. The connection between Tierney's obligation
to the New Jersey Police and Fireman's Retirement Fund
and New Jersey's obligation to pay him for performance of
his duties as a firefighter similarly cannot meet the
University Med. Ctr. test.

The respective retirement systems also may not continue
to deduct loan payments in preference to unsecured
creditors under the law of setoff. Assuming again that Anes
has a debt to the Retirement System, the System has at
most a right to set off Anes' debt against the city's
obligation to pay Anes' salary. Section 553(a), however,
does not exempt the setoff from S 1325(b)(1). Section 553(a)
exempts a creditor's right of setoff from the bankruptcy
code only where each party's obligation arose prior to
commencement of the bankruptcy case. See 11 U.S.C.
S 553(3); see also University Med. Ctr., 973 F.2d at 1079;
Davidovich v. Welton (In re Davidovich), 901 F.2d 1533,
1537 (10th Cir. 1990). Anes' debt to the Retirement System
(if debt it was) arose when she obtained the loan, before she
entered bankruptcy. The city, however, has no obligation to
pay Anes' salary until she performs the services for which
she is employed. Any setoff of Anes' salary against her
alleged debt to the Retirement System, therefore, must be
consistent with S 1325(b)(1). The same dynamic applies in
Tierney's case requiring any setoff to conform to
S 1325(b)(1)'s requirements.

Because the salary deductions are neither a recoupment
nor a valid setoff under S 553(a), we agree with those courts
that have held that a bankruptcy court may order an
employer to stop deducting a debtor's payments on a loan

from the debtor's retirement account from the debtor's salary. See In re Delnero, 191 B.R. 539, 543 (Bankr. N.D.N.Y. 1996); In re Carpenter, 23 B.R. 318, 320 (Bankr. D.N.J. 1982).

V

For the reasons given, we will affirm the judgment of the District Court.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

10