### In re HQ GLOBAL HOLDINGS, INC., et al., Debtors.

#### No. 02–10760 (MFW).

United States Bankruptcy Court, D. Delaware.

March 11, 2003.

Daniel J. DeFranceschi, Russell C. Silberglied, Etta R. Wolfe, Richards, Layton & Finger, P.A., Wilmington, DE, Corinne Ball, Andrew L. Buck, Jones, Day, Reavis & Pogue, New York City, Charles M. Oellermann, Day, Reavis & Pogue, Columbus, OH, for Debtors.

William D. Sullivan, Elzufon, Austin, Reardon, Tarlov & Mondell, P.A., Wilmington, DE, Allan H. Ickowitz, Nossaman, Guthner, Knox & Elliott, LLP, Los Angeles, CA, for USP Texas, L.P.

Stephen T. Davis, Lawrence J. Tabas, Dorothy M. Claeys, Obermayer, Rebmann, Maxwell & Hippel, LLP, Wilmington, DE, for Franchisees' Committee and Certain Individual Franchisees.

Kevin Gross, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, DE, Mark S. Indelicato, Hahn & Hessen LLP, New York City, for Official Committee of Unsecured Creditors.

## OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Motion of USP Texas, L.P. ("USP") for an Order Authorizing Recoupment and the Objection of the Debtors thereto. For the reasons set forth below, we grant the Motion.

### I. FACTUAL BACKGROUND

HQ Global Holdings, Inc., and several of its affiliates ("the Debtors") filed voluntary petitions under chapter 11 of the Bankruptcy Code on March 13, 2002 ("the Petition Date"). Prior to the Petition Date, on October 11, 2001, one of the Debtors, HQ Global Workplaces, Inc. ("Workplaces"), had entered into a sublease ("the Sublease") pursuant to which USP subleased from Workplaces the 16th floor of the building located at 15305 Dallas Parkway, The Colonnade–Tower III, Addison, Texas ("the Premises"). Under the Sublease, monthly rent is due in the amount of $44,014.25. The Sublease also provides that USP may make certain alterations to the Premises and that Workplaces shall contribute up to $125,755 ("the Tenant Improvement Allowance") toward the cost of those alterations. USP made improvements to the Premises in excess of $230,000. Prior to the Petition Date, the improvements were all completed, the Landlord approved them, and demand was made for payment of the Tenant Improvement Allowance.

By its motion, USP seeks authority to recoup the $125,755 Tenant Improvement Allowance owed by Workplace against rent which it will owe to Workplace in the future. Workplace opposes that relief.

### II. JURISDICTION

The Court has jurisdiction over these Motions pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(B),(C),(G) & (O).

### III. DISCUSSION

■ USP's motion is premised upon the equitable doctrine of recoupment. Recoupment is an equitable remedy which permits the offset of mutual debts when the respective obligations are based on the same transaction or occurrence. *See, e.g., Anes v. Dehart (In re Anes)*, 195 F.3d 177, 182 (3d Cir.1999); *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1081 (3d Cir.1992).

■ The Third Circuit defined the equitable doctrine of recoupment as follows:

Recoupment is the setting up of a demand *arising from the same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.

*University Medical Center*, 973 F.2d at 1079 (*quoting* 4 Collier on Bankruptcy § 553.03, at 553–15–17) (emphasis in original). As the Third Circuit explained in *Lee v. Schweiker:*

The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable.

739 F.2d 870, 875 (3d Cir.1984).

In the bankruptcy context, recoupment has often been applied where the rele-

---

**1.** This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

vant claims arise out of a single contract "that provide[s] for advance payments based on estimates of what ultimately would be owed, subject to later correction." ... However, an express contractual right is not necessary to effect a recoupment.... Nor does the fact that a contract exists between the debtor and creditor automatically enable the creditor to effect a recoupment.... For the purposes of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, ... does not mean that the two arose from the 'same transaction.' " Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations.

*University Medical Center,* 973 F.2d at 1080–81.

■■■■ The doctrine of recoupment permits the offset of debts even if one arose pre-petition and the other arose post-petition, so long as both arose from the same transaction. *See, e.g., Ames,* 195 F.3d at 182. Recoupment "allows the creditor to assert that certain mutual claims extinguish one another in bankruptcy, in spite of the fact that they could not be 'setoff' under 11 U.S.C. Section 553. The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations in setoff in bankruptcy would be inequitable." *Lee v. Schweiker,* 739 F.2d at 875.

USP asserts that under the terms of the Sublease, Workplace is obligated to pay USP the $125,755 Tenant Improvement Allowance and that USP should be permitted to recoup that sum against rent due by USP under the Sublease. USP refers to paragraph 13 of the Sublease which specifically describes the obligation of Workplace as follows: "Sublessor acknowledges that Subtenant intends to perform certain alterations and improvements to the Subleased Premises.... All cost of Subtenant's Work shall be borne by Subtenant; provided, however, that Sublessor shall contribute up to $125,755 (the 'Tenant Improvement Allowance') toward the cost of Subtenant's Work."

■■■■ Workplace asserts, however, that the Sublease expressly forbids the reduction of the rent obligation due from UPS. It relies on the language in paragraph 9 of the Sublease which states: "Fixed Rent and all other amounts payable by Subtenant to Sublessor under the provisions of this Sublease ... shall be paid promptly when due, without notice or demand therefor, and without deduction, abatement, counterclaim or set off of any amount or for any reason whatsoever." Such a provision is enforceable under Texas law, made applicable by paragraph 27 of the Sublease. *See, e.g., E.E. Farrow Co. v. U.S. Nat'l Bank of Omaha,* 358 S.W.2d 934, 934 (Tex.Civ.App.1962).

UPS argues that the Sublease expressly allows recoupment of the tenant improvements against Fixed Rent in paragraph 13 which states in this regard that: "If upon completion of Subtenant's Work, the aggregate cost of Subtenant's Work is less than the Tenant Improvement Allowance, then provided Subtenant is not then in default under this Sublease, Sublessor shall apply the portion of the Tenant Improvement Allowance not paid by Sublessor toward the cost of Subtenant's Work against Fixed Rent until the entire unused Tenant Improvement Allowance has been so applied."

We conclude that the provisions of paragraph 13 control over the provisions of paragraph 9. As a matter of contract construction, a provision which deals specifically with a subject controls over a general provision in the same contract. *See, e.g., Capitol Bus Co. v. Blue Bird Coach Lines, Inc.,* 478 F.2d 556, 560 (3d Cir. 1973); *J.E. Faltin Motor Transp., Inc. v. Eazor Express Inc.,* 273 F.2d 444, 445 (3d Cir.1959). In this case, paragraph 9 deals generally with the payment of rent and provides that the rent is due without offset. However, paragraph 13 deals specifically with the tenant improvements and provides expressly that if Workplace does not pay the amount it has agreed to pay then that may be deducted from the rent. In this regard, paragraph 13 is the more specific and governs over the more general provision in paragraph 9. None of the cases cited by Workplace deal with such an express provision in the very contract at issue and, therefore, are not germane.

Workplace argues, however that the language of paragraph 13 does not support the argument of UPS. It asserts that under the very language cited by UPS, the setoff is permitted only where the tenant improvements are less than the allowance of $125,755.[2] Since the improvements exceeded $230,000, Workplace argues that the provisions of paragraph 13 do not permit reduction of the Fixed Rent.

We do not agree. Contract interpretation requires that we interpret a contract to give meaning to all its provisions and that we not interpret a contract to render any of its provisions meaningless. *See, e.g., Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 86 (2d Cir.2002); *McAbee Constr., Inc. v. U.S.,* 97 F.3d 1431 (Fed.Cir.1996); *Phila-*

*delphia Sav. Fund Soc'y v. Deseret Management Corp.,* 632 F.Supp. 129 (E.D.Pa. 1985). Under Workplace's argument, the Subtenant would lose all right to offset *any* of the tenant improvements if they exceeded the allowance by $1. That is illogical. The more reasonable interpretation is that the reduction in the Fixed Rent is limited to the amount of the allowance that the Sublessor has agreed to pay ($125,755). This is all that UPS seeks by its motion.

Workplace also argues that under Third Circuit authority, recoupment is to be narrowly construed. *See, e.g., Anes,* 195 F.3d at 182; *University Medical Center,* 973 F.2d at 1081. It also argues that the case cited by UPS is distinguishable. *See, e.g., Megafoods Stores, Inc. v. Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.),* 60 F.3d 1031 (3d Cir.1995). Workplace argues that in the *Flagstaff* case, the lease expressly allowed the tenant to recoup repair costs from the rent and, significantly, did not have any provision that expressly prohibited recoupment against the rent. *Id.* at 1034.

While we agree that recoupment is to be narrowly construed, we conclude that it is appropriate in this case. Here, as in *Flagstaff,* the Sublease expressly provides that the Tenant Improvement Allowance be applied against the rent due if Workplace does not pay it. Thus, "[b]oth the claim for repair costs and the rent arise from the lease, and it would be inequitable for the [Debtor] to receive rent without compensating tenant for undertaking the repairs." *Id.* at 1035.

Furthermore, the doctrine of recoupment is an equitable doctrine and does not require an express contractual provi-

**2.** Workplace does not argue that the tenant improvements were not in compliance with the other requirements of the Sublease.

sion or statute to give it effect. *Id.* Since USP has already completed the improvements and since Workplace expressly agreed to pay the Tenant Improvement Allowance or to reduce the rent by it, we readily conclude that the doctrine of recoupment does apply and mandates that USP may recoup the Tenant Improvement Allowance against the rent due under the Sublease.

## IV. CONCLUSION

For the foregoing reasons, we grant the Motion of USP and will allow it to recoup the Tenant Improvement Allowance owed to it from the rent otherwise due by it to Workplace.