In re Deborah L. BOGAN, Debtor.

Sheldon Gantt, Inc., Movant,

v.

Deborah L. Bogan and William Pineo, Chapter 7 Trustee, Respondents.

Bankruptcy No. 99–11181.
Motion No. B&W–5.
Docket No. 175.

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 18, 2003.

William Pineo, Esq., Meadville, PA, trustee.

Thomas A. Dill, Esq., Chester B. Scholl, Sharon, PA, for Deborah L. Bogan.

P. Raymond Bartholomew, Esq., Hermitage, PA, Brian B. Dutton, Gary J. Gaertner, Sheri L. Geis, Kimberly J. Hong, Grenen & Birsic, P.C., Pittsburgh, PA, William G. McConnell, Jr., Sharon, PA, James P. Valecko, Pittsburgh, PA, Michael E. Wish, Hermitage, PA, for creditors.

*OPINION*

WARREN W. BENTZ, Bankruptcy Judge.

*Introduction*

Deborah L. Bogan ("Debtor") filed a voluntary Petition under Chapter 13 of the Bankruptcy Code on July 27, 1999 ("Filing Date"). The case was converted from Chapter 13 to Chapter 7 on July 5, 2001. William Pineo, Esq. ("Trustee") serves as Chapter 7 Trustee. Before the Court is the Trustee's Motion for Summary Judgment on the Motion of Sheldon Gantt, Inc. ("Sheldon Gantt") for Turnover of Funds Being Held by Chapter 7 Trustee.

*Factual Background*

Debtor filed a proposed Chapter 13 plan dated September 23, 1999. The Plan ("Plan") contemplated monthly payments of $1,600 by the Debtor to the Chapter 13 Trustee and also required the Debtor to devote the proceeds of a personal injury claim and funds that Debtor was to receive from her father's decedent's estate to the Plan. Debtor commenced making $1,600 per month plan payments to the Chapter 13 Trustee on November, 1999. The Plan was confirmed on an interim basis as a form of adequate protection to allow the Chapter 13 Trustee to begin distributions to secured creditors pending Debtor's submission and confirmation of a further amended plan.

The Chapter 13 Trustee's records reflect the following monthly plan payments:

| | |
|---|---|
| 11–23–1999 | 1,600.00 |
| 12–06–1999 | 1,600.00 |
| 01–10–2000 | 1,600.00 |
| 02–07–2000 | 1,600.00 |
| 03–21–2000 | 1,600.00 |
| 05–04–2000 | 1,600.00 |
| 06–02–2000 | 1,600.00 |
| 07–07–2000 | 1,600.00 |
| 07–14–2000 | 3,916.12 |
| 08–15–2000 | 1,600.00 |
| 09–11–2000 | 1,600.00 |
| 10–10–2000 | 1,600.00 |
| 11–09–2000 | 1,600.00 |
| 12–13–2000 | 1,600.00 |

The Trustee's records further indicate that the source of the July 14, 2000 payment of $3,916.12 was a tax refund. All of the payments received by the Chapter 13 Trustee between November 23, 1999 and December 13, 2000 were distributed to secured creditors in accordance with the interim confirmation order.

Late in the year 2000, Debtor received $15,750.40 from the settlement of a personal injury action and an inheritance of $7,750 from her father's decedent's estate. Those proceeds were remitted to the Chapter 13 Trustee in January, 2001.

Debtor proceeded to file Amended Schedules and an Amended Plan on January 18, 2001. By Order dated February 2, 2001, Debtor was directed to file a further Amended Plan by February 12, 2001 and a hearing to consider confirmation of the plan was fixed for March 16, 2001. Despite the many delays and Debtor's inept attempts at presentation of a confirmable plan, it finally began to appear that the Chapter 13 case might actually be feasible and reach the confirmation stage.

The true nature of Debtor's deceptive and fraudulent activities would soon come to the Court's attention. On February 8, 2001, Sheldon Gantt filed an Emergency Motion for Relief from Stay. Sheldon Gantt averred that Debtor had embezzled the sum of $414,841.42 while employed as its bookkeeper between October 28, 1999 and September 28, 2000. Sheldon Gantt had only recently learned of the bankruptcy and sought relief from the automatic stay to pursue a pending equity proceeding in the Court of Common Pleas of Mercer County, PA (the "State Court"). Before it learned of the Debtor's bankruptcy case, Sheldon Gantt had already obtained a State Court Order freezing Debtor's accounts and further requests for an accounting and judgment were pending.

By Order dated February 21, 2001, Sheldon Gantt was granted partial relief from the automatic stay "in order to proceed with actions in the Court of Common Pleas to trace or enjoin transfers of assets owned or controlled by Debtor, or to otherwise prevent the disappearance of assets." A further hearing on Sheldon Gantt's motion was continued until after the date that the Debtor was to appear for an examination before the Chapter 13 Trustee pursuant to Fed.R.Bankr.P.2004 (the "Rule 2004 Examination"). At the Rule 2004 examination, Debtor testified that she had entered a guilty plea for bank fraud in violation of Title 18, United States Code, Section 1344 (18 U.S.C. § 1344) under the first count of the indictment brought against her in the United States District Court for the Northern District of Ohio. As part of the plea, Debtor signed a Plea Agreement dated April 19, 2001 in which Debtor agrees that "she is, in fact, guilty of said offense." In paragraph 8 of the Plea Agreement, Debtor further acknowledges her "conduct and role in the offense" as follows:

A. Between on or about October 28, 1999, and on or about September 28, 2000, in the Northern District of Ohio, Eastern Division, and elsewhere, the defendant, DEBORAH TODA–BOGAN, did knowingly execute and attempt to execute a scheme and artifice to defraud National City Bank, a federally-insured financial institution, and to obtain mon-

ey, funds, credits, assets, securities and other property belonging to Sheldon Gantt, Inc., and which were under the custody and control of National City Bank, by means of false and fraudulent pretenses, representations and promises.

B. Between April 1999 and October 12, 2000, the defendant, DEBORAH TODA–BOGAN, was employed as an accountant and bookkeeper at Sheldon Gantt, Inc., a general construction business located in Niles, Ohio. During the same time period, Sheldon Gantt, Inc. maintained a corporate bank account at National City Bank, a federally-insured financial institution.

C. The defendant's duties and responsibilities included operation of the Sheldon Gantt, Inc. computer system, preparing checks to pay employees, suppliers and subcontractors, as well as reconciling the monthly bank statements and preparing the corporation's general ledger.

D. It was part of the scheme and artifice that when the defendant, DEBORAH TODA–BOGAN, prepared corporate payroll and other checks at various times between October 28, 1999, and September 28, 2000, she prepared thirteen (13) additional Sheldon Gantt, Inc. checks totaling $414,841.62 (in individual amounts ranging from $15,256.00 to $46,555.72), payable to General Service Contractors, an Ohio corporation affiliated with Sheldon Gantt, Inc., which the defendant included in stacks of payroll and other checks routinely given to an officer of Sheldon Gantt, Inc. for signature.

E. After the checks payable to General Service Contractors were signed, the defendant fraudulently added the words "Deborah Toda–Bogan d/b/a" to the front the thirteen checks in question, directly above the payee designation so as to make the checks appear to have been written to "Deborah Toda–Bogan d/b/a General Service Contractors." Subsequently, the defendant endorsed the forged and fraudulent checks and deposited them into a bank account the defendant maintained at First National Bank of Pennsylvania.

F. In an attempt to conceal her fraudulent activities, the defendant removed and destroyed the original forged canceled checks from the monthly National City Bank statements received by Sheldon Gantt, Inc.

G. The defendant, DEBORAH TODA–BOGAN, was interviewed by FBI agents on October 12, 2000, concerning the subject matter of this investigation. At that time, the FBI was aware of only 7 of the 13 checks in question, totaling approximately $220,000.00. During the interview, the defendant prepared a handwritten statement and orally stated to the agents that the seven checks presented for her review, constituted all of the fraudulent checks she prepared and negotiated while working at Sheldon Gantt, Inc. Subsequently, on October 25, 2000, a representative of the victim, Sheldon Gantt, Inc., contacted the FBI, and informed the case agent that 6 additional fraudulent checks had been uncovered, each appearing to have been prepared, forged and negotiated by the defendant, DEBORAH TODA–BOGAN, in the same manner as the first 7 checks.

H. As a result of the conduct of the defendant, DEBORAH TODA–BOGAN, Sheldon Gantt, Inc. has suffered losses in the approximate amount of $414,841.62.

*Plea Agreement*, ¶ 8.

Debtor's embezzlement scheme involved 13 different checks drawn on Sheldon Gantt's business account and deposited

into an account held by Debtor at the First National Bank of Pennsylvania.

The tabulation of the embezzled checks is as follows:

| Check No. | Amount | Issue Date | Date deposited at FNB/PA |
|---|---|---|---|
| 13146 | 24,875.85 | 10/28/99 | 11/10/99 |
| 13446 | 39,081.50 | 11/26/99 | 11/29/99 |
| 14014 | 23,139.00 | 1–21–00 | 1/31/00 |
| 14458 | 30,452.00 | 3/14/00 | 3/15/00 |
| 14665 | 15,356.00 | 4/6/00 | 4/7/00 |
| 14846 | 18,000.00 | 5/5/00 | 5/9/00 |
| 14975 | 37,483.00 | 5/25/00 | 5/30/00 |
| 15047 | 31,187.00 | 6/15/00 | 6/19/00 |
| 15165 | 39,629.25 | 6/26/00 | 6/29/00 |
| 15268 | 36,000.00 | 7/10/00 | 7/12/00 |
| 15331 | 42,846.10 | 7/27/00 | 7/31/00 |
| 15632 | 30,236.00 | 8/29/00 | 9/1/00 |
| 15938 | 46,555.72 | 9/28/00 | 9/29/00 |
| | 414,841.42 | | |

After Sheldon Gantt learned of the Plea Agreement, it filed a Motion for Supplemental Relief from Stay. A hearing on Motion for Supplemental Relief was held on June 22, 2001 following which the Court, by Order dated June 27, 2001, directed that the Chapter 13 Trustee shall not make any distribution from the cash held until further order of Court and, by Order dated July 5, 2001, converted the case to Chapter 7.[1]

The first Meeting of Creditors in the Chapter 7 case under 11 U.S.C. § 341 was originally scheduled for August 21, 2001. The meeting was adjourned several times because the Debtor was incarcerated in federal prison. Following application and Court approval, the meeting was held on February 19, 2002, with the Debtor attending by telephone. At said meeting, counsel for Sheldon Gantt questioned the Debtor regarding disposition of the embezzled funds. Debtor refused to answer on the ground of privilege from self-incrimination. The Trustee adjourned the meeting in order to determine what might be done. The § 341 meeting has never been closed and Debtor has yet to account for or return the embezzled funds that she stole.

On August 1, 2002, the Trustee filed Objections to Exemptions claimed by Debtor. In response, Debtor filed an Amended Schedule C, Property Claimed as Exempt. The Trustee then filed Objections to Amended Exemptions, specifically objecting to Debtor's claim of exemptions under 11 U.S.C. § 522(d)(11)(D) and (E). The Trustee subsequently filed his Amended Objection to Exemptions. By separate Opinion and Order, we have determined that Debtor will not be permitted to claim an exemption in any property of the estate.

On January 21, 2003, Sheldon Gantt filed the within Motion for Turnover of Funds Being Held by Chapter 7 Trustee. Sheldon Gantt asserts that each of the $1,600 monthly payments made by the Debtor to the Chapter 13 Trustee were made with embezzled funds; that said payments were used to make distributions to secured creditors under the interim confirmation order; and that even though the funds presently being held by the Trustee cannot be traced to embezzled funds, the Court should "direct the Chapter 7 Trustee to turn over the sum of $20,800 for the reason that plan payments totaling this amount were made from embezzled funds, thus giving [Sheldon Gantt] a right of recoupment/setoff against non-embezzled funds still being held by the trustee."

The Trustee has filed a Motion for Summary Judgment. Trustee states that "[e]ven if all the allegations of the Motion for Turnover of Funds being held by the Trustee were true, they do not state

---

1. The Chapter 13 Trustee held the $15,750.40 from the personal injury action and $7,750 from the decedent's estate. The funds were subsequently remitted to the Chapter 7 Trustee who presently holds the funds.

grounds for granting the requested relief." [2]

In its Response to Trustee's Motion for Summary Judgment, Sheldon Gantt states that as to its "recoupment" theory, it "does see the logic to the trustee's agreement." Sheldon Gantt further avers that it has asserted other theories for recovery being reclamation based on fraud and/or enforcement of either a constructive trust or an equitable lien.

## Discussion

### A. Recoupment

 "Recoupment is an equitable remedy which permits the offset of mutual debts when the respective obligations are based on the same transaction or occurrence." *In re HQ Global Holdings, Inc.,* 290 B.R. 78, 80 (Bankr.D.Del.2003) *citing In re Anes,* 195 F.3d 177, 182 (3d Cir. 1999); *In re University Med. Ctr.,* 973 F.2d 1065, 1081 (3d Cir.1992). "[T]he right of recoupment...exists only where the two debts arise out of the same transaction." *In re Anes,* 195 F.3d 177, 182 (3d Cir.1999).

> For the purposes of **recoupment**, a mere logical relationship is not enough: the "fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, ...does not mean that the two arose from the '**same transaction.**'" Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations. Use of this stricter standard for delineating the bounds of a transaction in the context of recoupment is in accord with the principle that this

doctrine, as a non-statutory, equitable exception to the automatic stay, should be narrowly construed. *In re University Med. Ctr.,* 973 F.2d 1065, 1081 (3d Cir.1992) *quoting Lee v. Schweiker,* 739 F.2d 870, 875 (3d Cir.1984).

The funds held by the Trustee in this case do not derive from the same transaction as the embezzlement and accordingly, Sheldon Gantt's claim for turnover under a recoupment theory must fail.

### B. Constructive Trust/Equitable Lien

 In order to establish rights as a trust recipient, the claimant must be able to identify the trust fund or property, and where the fund or property has been mingled with the general property of the debtor, the claimant must sufficiently trace the property. *City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92, 95 (3d Cir.1994). "The remedies of constructive trust, sequestration, and the like cannot be applied, however, where the subject *res* cannot be traced or presently identified." *In re Nation-Wide Exchange Services, Inc.,* 291 B.R. 131, 144 (Bankr.D.Minn.2003).

The funds held by the Trustee arise from the settlement of Debtor's personal injury claim and from Debtor's inheritance from her father's decedent estate. It is not possible for Sheldon Gantt to trace the funds which Debtor embezzled from it to the monies presently held by the Trustee and accordingly, Sheldon Gantt's claim for turnover under a constructive trust or equitable lien theory must fail.

### C. Reclamation Based on Fraud

 The legal theory underlying a suit for **reclamation based on fraud** is that "a Trustee in Bankruptcy can have

**2.** We will treat the Trustee's Motion for Summary Judgment as a Motion for Judgment on the Pleadings. All well-pleaded facts in Shel-

don Gantt's turnover motion will be taken as true.

no interest in property acquired by the **fraud** of the bankrupt, or anyone else, as against the claim of the rightful owner of such property." *Nicklaus v. Bank of Russellville*, 336 F.2d 144, 146 (8th Cir.1964). The rule was succinctly stated in *In re Stridacchio*, 107 F.Supp. 486, 487 (D.N.J.1952):

Where goods are obtained by fraud of the bankrupt, the seller may rescind the contract of sale and reclaim them if he can identify them in the hands of the trustee.

*In re Paragon Securities Co.*, 589 F.2d 1240, 1242 (3d Cir.1978) (footnote omitted).

■ Sheldon Gantt again fails to meet the requirement that it identify its property in the hands of the Trustee. The Trustee holds none of the embezzled funds.

### Conclusion

Sheldon Gantt has suffered significant losses as the result of Debtor's abhorrent activities. There are, however, other creditors with claims in this case that will also incur losses. The practical effect of the equitable theories raised by Sheldon Gantt is to elevate its claim above the claims of all other creditors. The theories advanced in support of such an outcome are appropriate where the money held for distribution arises from the embezzled funds or can be traced from the embezzled funds. But where, as here, the fund held by the Trustee is from a completely separate and independent source, then the fundamental principle of bankruptcy law, an orderly distribution to all creditors of the bankruptcy estate in accordance with the scheme of priorities set forth in the Bankruptcy Code must be followed.

The Trustee's Motion for Summary Judgment must be granted and Sheldon Gantt's Motion for Turnover of Funds must be denied. An appropriate Order will be entered.

### ORDER

This 18 day of December, 2003, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED that the Trustee's Motion for Summary Judgment on Motion of Sheldon Gantt, Inc. for Turnover of Funds Being Held by Chapter 7 Trustee is GRANTED and the Motion for Turnover of Funds Being Held by Chapter 7 Trustee filed by Sheldon Gantt, Inc. is REFUSED.